ARNO WISWELL & *als., Receivers of Hancock Bank, versus* JOHN N. STARR & *als.*
◆

Each stockholder in a bank is liable to make good all losses sustained by the pecuniary inability of the directors, by whose mismanagement the bank has sustained a loss, to an amount *not exceeding the amount of his stock at the time.*

Each stockholder is also liable, at the expiration of the charter, for the redemption of *all unpaid bills*, in proportion to the stock he then holds. The sum to be contributed by each will be in proportion to the whole number of shares actually held at the expiration of the charter, whether such holders are within or without the jurisdiction of the Court.

If the whole number of shares, necessary to make up the capital stock named in the charter, does not appear on the books, or otherwise, to be held by any persons, the liability will be apportioned according to the number of shares actually held, and not upon the whole capital named in the charter.

When one of the receivers named in the bill is also a stockholder, the bill cannot be sustained, as the same person cannot be both a complainant and respondent, but the bill may be amended on motion.

The charter of a bank expires, within the meaning of the statute, when an injunction is made perpetual.

BILL IN EQUITY. A general demurrer was filed to the bill.

The case was argued in writing by

*J. A. Peters*, in support of the demurrer, and by

*Rowe & Bartlett, contra.*

The opinion of the Court was drawn up by

CUTTING, J.—The bill, in substance, alleges *that* the Hancock Bank was incorporated March 21, 1853, with a capital of $50,000, in shares of $100 each, and subsequently went

into operation; *that,* on September 19, 1857, the Bank Commissioners represented to a Justice of this Court, " that, upon examining said bank, they were of opinion that its condition was such as to render its further progress hazardous to the public," &c., and prayed " for an injunction to restrain said incorporation from further proceeding with its business." &c.

Whereupon, on September 21st, a temporary injunction was granted, which, on September, 30th, on a hearing, was modified; and on November 20th, of the same year, was made perpetual, and the complainants were duly appointed receivers, qualified, and proceeded in the regular discharge of their duties.

And, it is further alleged, *that* all the property of the bank, when reduced to cash, was $8,605,64, and that the claims against the bank, presented and allowed, amounted to the sum of $16,107,70; *that* John N. Starr was an original and present holder of ten shares, together with twenty-one others, owning in like manner one hundred and sixty-seven shares; *that* twenty-seven other individuals, not originally, were stockholders on September 30, 1857, owning one hundred and ninety-nine shares; *that,* since that time, seven others have transferred their stock, being fifty-seven shares; and, to four persons, nineteen shares have been transferred, five of which were to *Samuel Waterhouse,* one of the receivers; *that* the receivers, in their own names, but, in behalf of the claimants, file this bill in equity against the persons named and liable as stockholders, praying that they shall be made to contribute to the payment of the debts of the corporation.

To this bill, *John N. Starr,* alone, appears by his counsel, and files a general demurrer. We say that he alone appears, because, the term "and others," is too indefinite to create a responsibility. Thus presenting various questions, under the general banking law, for the first time to be adjudicated.

The statute in force, at the time the Hancock Bank was chartered, was that of 1841, (Act of Amendment, c. 1, § 8,) and we cite only those sections having application to the questions raised.—Section 1, "every bank which now is, or

shall hereafter be incorporated under the authority of this State, except savings banks, shall be governed by the following rules, and subject to all the duties, limitations, liabilities and provisions contained in this chapter."

Section 45. " The holders of stock in any bank, at the time when its charter may expire, shall be liable, in their individual capacities, for the redemption and payment of all bills, which may have been issued by said bank, and which shall remain unpaid, in proportion to the stock they may respectively hold, at the dissolution of the charter," &c.

Section 46, among other things, provides that—" any holder of any bill or bills issued by any bank, which bill or bills, after the expiration of its charter, shall remain unredeemed, and which may have been duly demanded of such bank, may pursue his remedy by a bill in equity, to be prosecuted in the Supreme Judicial Court."

Next in order is the statute of 1855, c. 164, which proposes not to change, alter, or increase the liabilities of stockholders, but, in some respects, to change the remedy by transferring certain powers to the receivers, for § 9 contains this language :—" Nor shall any thing in this Act be construed to increase the amount for which the stockholders of any bank may be liable, under existing laws." Still, notwithstanding the liabilities of stockholders were so guarded, §§ 4, 5 and 6, of the same chapter, instead " of all bills, which may have been issued by said bank," refer to claims and claimants— terms sufficiently comprehensive to embrace all the indebtedness of the bank.

After a perpetual injunction and the appointment of receivers, § 6 provides that—" If it be made to appear to the Court, that the assets aforesaid are insufficient to pay the said claims against the bank, said receivers shall forthwith file their bill in equity, in their own names, but in behalf of the claimants, against the persons who are or were stockholders of such bank, and, by law, may be liable to contribute to the payment of its debts," &c.

The statute of 1857, which is a revision of all prior stat-

utes upon the subject of banking then in force, provides remedies for the creditors, by a bill in equity against the stockholders, upon the event of certain contingencies, viz.: —

*First.* — In case of the pecuniary inability of the directors, by whose mismanagement the bank has sustained a loss, each stockholder shall be liable therefor, to an amount not exceeding the amount of his stock at that time.    § 43.

*Second.* — The holders of stock in any bank, at the expiration of its charter, shall be liable in their individual capacities for the redemption and payment of all bills issued by said bank, and remaining unpaid, in proportion to the stock they then hold.    § 46.

*Third.* — The receivers, after their appointment, instead of the claimants, are to file their bill in equity, in their own names, but in behalf of the claimants, against the persons liable as stockholders to contribute to the payment of the debts. §§ 73, 75.

The charter of the Hancock Bank expired by operation of law, on November 20, 1857, when the injunction was made perpetual and the receivers were appointed.    *Crease* v. *Babcock*, 23 Pick., 334.    At that time, as the general law was, under which they accepted the charter, each stockholder became liable, in their individual capacity, for the redemption and payment of *all bills* issued by the bank, and remaining unpaid, in proportion to the stock they *then* held, which proportion is not limited to the amount of their stock, as in case of loss by the mismanagement of the directors; but they are not responsible for all the debts or claims of the creditors, and the claims denominated debts in § 73, and so described in the bill, must be construed to mean only the unpaid bills. Any other construction would increase the liability of stockholders by legislation subsequent to chartered rights, and would be directly opposed to the express declaration of the Legislature in their public Act of 1855, before cited.

All the stockholders should be embraced in the bill, but only such can be made to contribute, who are within the jurisdiction of this Court, by residing or having attachable pro-

perty within the State.   And, although the bill is against all, jointly, yet each may answer severally and independently, and the sum to be contributed by each, will be in proportion to the whole number of shares held at the expiration of the char-ter, whether such holders were within or without the juris-diction.

It appears, that the capital stock was $50,000, and should have been represented by the holders of 500 shares, whereas, it is alleged that, on September 30, 1857, a short time before the final injunction, only 376 shares were so represented.   It is true that the statute of 1841 required that one half, at least, of the capital stock should be paid in, in gold and silver money, before a bank could go into operation, which fact was to be ascertained and certified to the office of the Secretary of State, by the Bank Commissioners, aided by the oath of a majority of the bank directors, and, in like manner, the other half within twelve months from the date of the charter.   But the bill avers that the charter was accepted—the corporation organized and went into operation.   It is to be presumed that the State Commissioners discharged their official duties, that the directors' oaths were not false, that the semi-annual returns were made correctly and in good faith, and that the corporation, from its organization, during a period of some years under State supervision, was conducted according to law; but when, or in what manner, the deficient shares were lost, or merged, it no where appears.   Whatever may be the legal relations between the corporation and its members, it would be inequitable in those who have put the machine in motion, to escape responsibility to the public under a plea of fraud and deception.

The bill bears date September 29, 1859, and, not being for a discovery or praying for an injunction, need not to be verified by oath.   The transferring of shares, subsequent to the dis-solution of the corporation by the perpetual injunction, can have no effect to relieve the prior holders of such shares from their responsibility, nor even during the pendency of the tem-porary suspension, unless transacted in good faith, and not

with a design to escape existing liability. *Marcy* v. *Clark*, 17 Mass., 330.

It is inferable, from an allegation in the bill, that *Samuel Waterhouse, Esq.*, at the time he was appointed a receiver, was a stockholder in the bank, and has been declared against as such. He cannot be both a complainant and respondent; the latter he must be, as has been shown, the former he would not have been, had such fact come to the knowledge of the Judge, before his appoiniment. Under existing circumstances, the rules of equity may, on motion, permit his name to be stricken out of the bill, and the majority of the receivers proceed. *See* R. S., c. 1, § 4, clause 3. But, at present, for that cause, the bill is defective, and the

*Demurrer sustained.*

TENNEY, C. J., RICE, APPLETON, MAY and KENT, JJ., concurred.