## UNITED STATES *v.* KNOX.

1. Where, in order to discharge the liabilities of an insolvent national banking association, the comptroller of the currency assessed against the several shareholders a sufficient percentage upon the par value of the stock by them respectively held, he has no power to direct a further assessment to supply the deficit caused by the inability of the receiver to enforce payment from such as are insolvent or beyond the jurisdiction.

2. " In addition to the amount invested in the shares," the holders thereof, after the exhaustion of the assets of the association, are, to a sum not exceeding the par value of the shares, "individually responsible, equally and ratably and not one for another," for its outstanding debts. The liability is several, and is not affected by the failure of any other shareholder to pay the amount assessed against him.

ERROR to the Supreme Court of the District of Columbia. The facts are stated in the opinion of the court.

*Mr. Thomas J. Durant* and *Mr. Charles W. Hornor* for the plaintiff in error.

*Mr. Charles Case*, contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

This case is a petition for a writ of *mandamus* directed to the comptroller of the currency. It was fully heard in the

court below upon the merits.   The writ was refused, and judgment for costs rendered against the relator, the Citizens' National Bank of Louisiana.   This writ of error was thereupon sued out, and the case is thus brought before us for review.

There is no controversy as to the facts.   The only question presented for our consideration is a question of law.   The case made in the record, so far as it is necessary to be stated for the purposes of this opinion, is as follows:  On the 7th of April, 1874, the Crescent City National Bank of New Orleans was, and for some time had been, insolvent and in the hands of a receiver.   On that day the comptroller assessed each shareholder seventy per cent upon the par value of each share of his stock, and ordered the receiver to collect the assessment. This the receiver proceeded to do by filing a bill in equity in the Circuit Court of the United States for the District of Louisiana, against all the shareholders.   Thereafter he obtained a decree against all the defendants severally, who were within the jurisdiction of the court, for the amount due from each one according to the assessment, and the cause was thereupon continued to await any further assessment the comptroller might deem it proper to make, and it is still pending.

The capital stock of the bank was $500,000; seventy per cent, therefore, was $350,000.

This sum, if it could have been collected in full, would have paid all the debts of the bank and left a balance over.   But by reason of the insolvency of many of the shareholders the assessment netted only $112,658.13, and nothing, or very little more, will hereafter be realized from it.   From the proceeds of the assessment and other assets of the bank, eighty per cent of the principal of its debts have been paid.

The relator being a large creditor of the bank, requested the comptroller to order a further assessment of thirty per cent upon each share of the capital stock, for the discharge of the balance of principal and interest still due to its creditors, and to direct the receiver to proceed as before to collect the amount of the new assessment.   The comptroller refused, because the enforcement of such an assessment would compel the solvent shareholders to pay the sums and proportions due from the shareholders who are insolvent.

He holds that no such liability is imposed on the solvent shareholders, and that he has, therefore, no right or power to make the assessment as requested.

The point to be decided is whether he is clothed with this power and duty, and whether the shareholders are thus liable.

The first bank law was passed Feb. 25, 1863, c. 58, 12 Stat. 665. The last clause of sect. 12 is as follows:—

" For all debts contracted by such association for circulation, deposits, or otherwise, each shareholder shall be liable to the amount of the par value of the shares held by him, in addition to the amount invested in such shares."

This provision was changed in 1864, and has been since and is now in force in these terms: " The shareholders of every national banking association shall be held individually responsible, *equally and ratably, and not one for another*, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." Rev. Stat., sect. 5151.

The act of 1863 made no provision for enforcing the personal liability of shareholders, while that of 1864 provided that it might be done through a receiver appointed by the comptroller, and acting under his direction. Id., sect. 5234.

The difference between the clause creating the individual liability as it was originally, and as it was after it was amended and altered, is obvious and striking. The change was plainly made *ex industria*, to prevent the possibility of doubt as to the meaning of Congress. What the effect of the clause would have been without the change is a point we are not called upon to consider. The charter of a private corporation is a contract between the law-making power and the corporators, and the rights and obligations of the latter are to be measured accordingly.

By the common law the individual property of the stockholders was not liable for the debts of the corporation under any circumstances. Here the liability exists by virtue of the statute and the assent of the corporators to its provisions, given by the contract which they entered into with Congress in accepting the charter. With respect to the character of that

liability, it is entirely clear from the language employed in creating it, that it is several and cannot be made joint, and that the shareholders were not intended to be put in the relation of guarantors or sureties, " one for another," as to the amount which each might be required to pay.

In the process to be pursued to fix the amount of the separate liability of each of the shareholders, it is necessary to ascertain, 1, the whole amount of the par value of all the stock held by *all the shareholders ;* 2, the amount of the deficit to be paid after exhausting all the assets of the bank; 3, then to apply the rule that each shareholder shall contribute such sum as will bear the same proportion to the whole amount of the deficit as his stock bears to the whole amount of the capital stock of the bank at its par value. There is a limitation of this liability. It cannot in the aggregate exceed the entire amount of the par value of all the stock.

The insolvency of one stockholder, or his being beyond the jurisdiction of the court, does not in any wise affect the liability of another ; and if the bank itself, in such case, holds any of its stock, it is regarded in all respects as if such stock were in the hands of a natural person, and the extent of the several liability of the other stockholders is computed accordingly. *Crease* v. *Babcock*, 10 Metc. (Mass.) 525.

These rules have been applied in several well-considered judgments of other courts, where the words we have italicized were not in the statutes upon which they proceeded. We have found no case in conflict with them. See *Crease* v. *Babcock*, *supra ; Atwood* v. *R. I. Agricultural Bank*, 1 R. I. 376.; *In the Matter of the Hollister Bank*, 27 N. Y. 393 ; *Adkins* v. *Thornton*, 19 Ga. 325 ; *Robinson* v. *Lane*, id. 337 ; *Wiswell* v. *Starr*, 48 Me. 401. See also Morse on Banking, 503.

Although assessments made by the comptroller, under the circumstances of the first assessment in this case, and all other assessments, successive or otherwise, not exceeding the par value of all the stock of the bank, are conclusive upon the stockholders, yet if he were to attempt to enforce one made, clearly and palpably, contrary to the views we have expressed, it cannot be doubted that a court of equity, if its aid were invoked, would promptly restrain him by injunction.

Nothing in this opinion is intended in any wise to affect the authority of *Kennedy* v. *Gibson and Others*, 8 Wall. 498, and *Casey* v. *Galli*, 94 U. S. 673. On the contrary, we approve and reaffirm the rule laid down in those cases.

The comptroller decided correctly as to his duty in this case.

*Judgment affirmed.*