# Supreme Court Decisions.

## NATIONAL BANKS CAN NOT BECOME LIABLE AS PARTNERS.

### THE MERCHANTS NATIONAL BANK v. WEHRMANN ET AL.

#### 69 Ohio State—Decided, October 27, 1903.

*A National Bank Can Not be a Member of a Partnershp—Debtor of Bank Tranferred Shares in a Partership to Said Bank—Bank Thereby Became Owner of Said Shares But Not a Member of the Partnership.*

1. A national bank, established under the act of Congress providing for such banks, can not be a member of a partnership, and can not become liable as partner.

2. A customer of a national bank being largely indebted to the bank, and being in failing circumstances, and being the owner of nine shares in a partnership consisting of forty shares, each evidenced by a certificate transferable on the books of the partnership, transferred his nine shares to the bank to secure payment of his indebtedness, the bank becoming the owner of such shares. *Held:* That such transfer did not in legal effect make said bank a partner, but a part owner in severalty of the property then owned by the partnership, and as such liable for nine-fortieth parts of the debts and expenses incurred in purchasing, holding, handling, managing, improving and disposing of said property.

Error to the Circuit Court of Hamilton County.

The litigation in this case had its origin in an agreement signed by some twenty-five persons, of which the following is a copy, omitting signatures:

"We, the undersigned, in consideration of the mutual agreements herein contained, severally agree, as follows:

"First. That we will form a syndicate with a capital stock of $320,000, divided into forty shares, of the par value of $8,000 each, and we will take the shares as subscribed by us.

707

"Second. With said capital stock it is agreed to purchase a certain tract of land lying in section No. 33, Columbia township, Hamilton county, Ohio, as per plat hereunto attached, said tract containing 160 acres, more or less, the purchase price for same to be $300,000, payable $100,000 cash, and the balance ($200,000) on ten-year four per cent. ground rent, with privilege of purchase at any time, interest payable quarterly.

"Third. The balance of said capital stock, amounting to $20,000, shall be used for the improvement and development of said land, and for the expenses incidental to the management, control and sale thereof.

"Fourth. The shares of said stock are to be paid for as follows: The sum of $300 per share immediately on signing this agreement; the sum of $2,300 immediately after all shares are taken; the sum of $400 in sixty days after all shares are taken; the balance of $5,000 on each share to be paid out of the proceeds of lots.

"Fifth. After the cost of land, including the cost of making streets, advertising, etc., shall have been paid out of the receipts for the sale of lots, then the receipts will be considered net profits, and shall be divided among the shareholders equally, share and share alike.

"Sixth. Subscriptions to be binding only in case all the forty shares are taken within fifteen days from date hereof. Otherwise, said first payment of $300 on each share to be returned.

"Cincinnati, Ohio, January 25, 1889."

The full number of forty shares was subscribed, and certificates in the following form were issued to the subscribers respectively:

"THE ELSMERE SYNDICATE.

"Investment, $320,000.                    Paid up, $120,000.
"No. ⸺⸺⸺⸺⸺                         Non-assessable.

"This is to certify that ⸺⸺⸺⸺⸺⸺ is the owner of a 1-40 interest in The Elsmere Syndicate. Transferable in person or by attorney upon the books of the syndicate at its office in the city of Cincinnati, upon the surrender of this certificate.

"Witness our hands this ⸺⸺⸺ day of ⸺⸺⸺⸺.

"⸺⸺⸺⸺⸺⸺⸺⸺⸺

"⸺⸺⸺⸺⸺⸺⸺⸺⸺

"⸺⸺⸺⸺⸺⸺⸺⸺⸺

"*Trustees.*

"Countersigned.

"⸺⸺⸺⸺⸺⸺⸺

"*Secretary and Treasurer.*

"For value received, — — — — — sells to — — — — — — the interest above mentioned, and authorizes — — — — — —, attorney, to transfer the same on the books of the company.

"In presence of

"— — — — — — — —

"— — — — — — — —."

One F. B. McFarlan subscribed for certain shares and purchased others, so that he owned nine shares; and being largely indebted to the Merchants National Bank, he transferred said nine shares to said bank to secure said indebtedness, about the month of January, 1892, which transfer was made to "W. W. Brown, trustee," said Brown being cashier of said bank. The bank contends that the transfer to Mr. Brown was as collateral security for the debt; while others claim that the transfer made the bank the owner of the shares.

The syndicate was organized, by-laws adopted, officers elected, and the powers of the trustees defined, which included the platting of said property, the leasing and selling thereof, to pay the purchase money and ground rents, and to pay the balance of the funds to the holders of said certificates in proportion to the number of shares held by each.

The syndicate became insolvent in the year 1896, and the persons from whom the land had been obtained foreclosed and purchased the land, and thereby the syndicate was prevented from further carrying on its business.

After this transfer of the nine shares to Mr. Brown, trustee, the syndicate became largely indebted for improvements, ground rent, interest, and other items intended for the betterment of the property, and its conversion into money.

About July, 1897, an action was commenced by William F. Wehrmann against the parties interested in said syndicate, including W. W. Brown, trustee, and the said bank, seeking to hold the owners of said certificates as partners, and for an accounting. Issues were made up in which said Brown and said bank denied that they were at any time partners in said syndicate, and averring that said nine shares were held as collateral only.

The case was referred to a master, and he made his report, and the case was taken to the circuit court on appeal, and there tried upon the report of said master in the common pleas, and

exceptions thereto, and a finding of facts and conclusions of law separately, were made by the circuit court.

The facts found, going to show the liability of said bank, are as follows:

"First.    That what has been called herein The Elsmere Syndicate was a partnership formed for the purpose of taking the title by lease, with privilege of purchase, of certain lands situated near Norwood, in this county, owned by George W. B. Cleneay and Joseph S. Cleneay, which was under lease to one John Woltz, who quit-claimed his title to Myron A. Spencer, Frank B. McFarlan and James McArdle, Jr., as trustees for said syndicate, on or about the sixteenth day of February, 1889.   And that the business of the said syndicate was to subdivide said lands into lots, lay out and improve streets, and sell said lots for the profit of the members of the syndicate.

"Second.    That the interest of the partners in said partnership were represented by certificates of equal interest or shares, forty in number, numbered consecutively from one to forty and transferable from hand to hand on the books of the said company.

"Third.    That the partnership became insolvent, and it became impossible to carry on further the said business and said partnership was deprived of what remained of said leasehold premises by foreclosure and sale of same, and that it became necessary to file the petition in the court below to wind up the affairs and business of the said partnership, to realize the assets, if any, and to compel the partners to liquidate the indebtedness thereof.

"Fourth.    That on June 15, 1896, the interests in said partnership were held by the following named persons, in the proportion set opposite their names, to-wit:

Myron A. Spencer............................Two shares
Wm. F. Wehrmann estate, Theresa J. Wehrmann,
    executrix ...............................Five shares
Merchants National Bank of Cincinnati, Ohio....Nine shares
James Armstrong's estate, James C. Armstrong,
    Floris A. Sackett and Isaac B. Matson, ex-
Moses Krohn ...................................Three shares
Moses Krohn ...............................One share
Leopold Feiss ......................  ............One share
Benjamin Pritz ...............................One share
Peter G. Thompson ...........................One share
Joseph Taylor ..............................One share
William Bell .................................Eight shares
Richard Hempel .............................Three shares
W. B. Kennedy ..............................Two shares

J. Fred. Woltz .............................One share
James McArdle's estate, Margaret McArdle, ad-
    ministratrix ..............................One share
Peter J. Dunn's estate, Ella C. Donnell, executrix. .One share

being forty in all. That the above named William Bell and
W. B. Kennedy are residents of Canada, and have not and
could not be served with process herein, and are not subject to
the jurisdiction of the court. That the shares standing in the
name of Richard Hempel were not his property, and he is not
liable thereon, but one of said shares was conveyed to him by
John Brokamp, party hereto, and one of the original sub-
scribers to said syndicate, who is liable thereon. That the share
standing in the name of Adam T. Voll, No. 39, was one of the
five shares belonging to William F. Wehrmann, and that said
Wehrmann was the owner thereof, and that his estate is liable
for all assessments thereon, including the amount already paid
up by Adam .T. Voll, as hereinafter mentioned. That Myron
A. Spencer and J. Fred Woltz, above named, and Peter J. Dunn's
estate are insolvent and nothing can be made from them. That
·the others named, including John Brokamp, are liable for the
debts of the said partnership and the costs of this case, in propor-
tion to the number of shares held by each respectively, but the
right to contribution against said Myron A. Spencer and J.
Fred. Woltz and Peter J. Dunn's estate in favor of .the other
partners is ¯preserved. That the shares standing in the .name
·of W. W. Brown, trustee, are the shares of The Merchants
National Bank, originally held by it as collateral, but trans-
ferred to it as owner when they were transferred to said Brown;
that when so transferred the notes for which they had been
held as collateral were surrendered, and the said shares were
entered on the books of the bank as owned by the bank, and
so reported to the United States government, and the bank,
through its vice-president, took part in the management of the
said syndicate and in the effort to preserve its property from
sacrifice and loss, and all this was done with the knowledge and
acquiesence of the board of directors of said bank.''

The court found the indebtedness to different persons, in
detail, and then found that there are only twenty-three solvent
shareholders, and charges them, including said bank, with the
payment of the whole indebtedness, and adjudges that in case
of the subsequent insolvency of any of said shareholders before
payment, that the deficiency thus caused shall be made up by
the remaining solvent shareholders. The decree against the
bank is for over $17,000. The plaintiff having died, his executrix
carried on the litigation.

A motion for a new trial was overruled and bill of exceptions taken by the bank. Proper and full exceptions were saved throughout.

A petition in error was filed in this court by the bank, seeking to reverse the judgment of the circuit court.

*W. C. Herron,* for plaintiff in error.

*C. B. Matthews* and *Jacob Shroder,* for defendants in error.

BURKET, C. J.; SPEAR, DAVIS, SHAUCK and PRICE, JJ., concur.

The Merchants National Bank of Cincinnati is a corporation organized under the national banking laws of the United States, and The Elsmere Syndicate was a partnership consisting of forty shares, each partner holding one or more shares, and each share evidenced by a certificate as shown in the foregoing statement of facts, and which certificates were transferable on the books of the syndicate, and such transfers were intended to make the transferee a partner in the syndicate, instead of the transferor, without a dissolution of the partnership.

The circuit court finds that the bank became owner by transfer of nine shares of this syndicate or partnership, which shares were taken by the bank to secure the payment of a large indebtedness owing to said bank for loans by it made to one of its customers in the usual course of business.

The bank in accepting said transfer evidently regarded it as a collateral, but it so treated the shares, and so transacted the business as to said shares, that the circuit court found that the bank became the owner of the shares, and there was evidence warranting such finding. The case must, therefore, be determined upon the theory that the bank held the shares as owner and not merely as collateral; the purpose of such ownership, however, being to secure the ultimate payment of said indebtedness out of the proceeds of said shares, and to that end it was necessary that the property of said syndicate should be put into such condition as to yield the most money, and this is what the trustees of the syndicate attempted to do; and in so doing debts were incurred which the syndicate was unable to pay, and after all its property had been consumed in paying said debts, a large debt still remained.

The restrictions contained in our banking laws are for the purpose of securing the solvency and stability of the banks;

and the statutes should be so construed and the law administered as to reasonably bring about that end. The wealth and prosperity of the people depend, to a large extent, upon the soundness of the banks and the safety of the currency. The purpose of the government is to foster and encourage sound banking and preserve a safe currency; and it therefore allows national banks to collect claims due them, even though a statute or a rule of law or equity may have been infringed in the incurring of the debt. The punishment for such infringement must come from the federal authorities, in a proceeding instituted for that purpose, and not by a denial by the courts of the right of collection as a punishment.

It is largely for the purpose of maintaining the solvency of banks that a national bank is allowed to collect loans secured by mortgage in violation of Section 5137, U. S. Revised Statutes. *National Bank* v. *Matthews,* 98 U. S., 621; *National Bank* v. *Whitney,* 103 U. S., 99.

It is to the same end that the solvent shareholders in a national bank can not be compelled to stand good for the individual liability of the insolvent ones, and that the loss caused by such insolvency must be borne by the creditors of the bank. *United States* v. *Knox,* 102 U. S., 422; Section 5151, U. S. Revised Statutes.

Hence it is that while banks are hedged about with restrictive laws as to making loans and discounts, so as to incur no bad debts, the most liberal provisions are made for securing debts already incurred, by the taking of such collateral as may seem best in the judgment of the officers of the bank. Such collateral may become the property of the bank in course of enforcing the security. And while a national bank can not lawfully purchase and hold shares in a corporation as an investment (*California Bank* v. *Kennedy,* 167 U. S., 362), it may accept the stock of a corporation as collateral security for a loan, and may thereafter, in realizing upon the collateral, become the owner thereof, and liable for individual liability the same as any other stockholder (*National Bank* v. *Case,* 99 U. S., 628). This case seems to have been overruled in *Scott* v. *Deweese,* 181 U. S., 217, where the court say, at the close of the opinion:

"Whether a national bank may not be deemed a shareholder, within the meaning of Section 5151, if it holds shares of another

bank as security for previous indebtedness, is a question suggested in former cases, but not decided, and upon which in this case, no opinion need be expressed.''

But conceding that a national bank may take shares in another bank as collateral security for a new loan, or to secure the payment of an old one, and that it may become the owner of such shares in attempting to realize on such collateral, and that it may thereafter be liable to creditors on its individual liability as such shareholder, yet that falls far short of holding a national bank liable as a partner in a partnership, and liable as such partner for, not only its own share of the debts of the firm, but also, the debts of its co-partners. The individual liability of a holder of shares in a national bank is in its nature several and not joint (*United States* v. *Knox,* 102 U. S., 422), while the liability of a partner for partnership debts is, as to creditors, usually held to be joint, but some cases hold it to be joint and several.

The individual liability is an inseparable incident to national bank shares, for which the lawful holder is liable; but this liability is his own debt, and attaches to a specific several article of his property—the share of stock—and is therefore limited, and can not exceed the face value of the stock. But in the case of shares in a partnership, the liability of a partner is not for a specific amount adhering to his share as an incident and limited to a certain amount, but the only limitation is the whole indebtedness of the firm, and which in many cases would far exceed the entire resources of the bank, and drive it into insolvency. The purpose of allowing a national bank to take collateral security is to enhance its solvency, and not to permit it to enter into wild speculations as a partner under the pretext of enforcing its rights as a pledgee or owner.

''It is settled that the United States statutes relative to national banks constitute the measure of the authority of such corporations, and that they can not rightfully exercise any powers except those expressly granted, or which are incidental to carrying on the business for which they are established (*Logan County Bank* v. *Townsend,* 139 U. S., 67, 73).'' *California Bank* v. *Kennedy,* 167 U. S., 362, 366.

To become a member of a partnership in any manner or for any purpose, is not incidental to carrying on the business for

which national banks are established and is certainly not expressly granted. The power therefore does not exist. The liabilities for which a national bank must respond, are such only as are created or incurred by its officers, acting in the capacity of officers of the bank alone, and not in connection with other trustees or officers of other companies. Were it otherwise the other trustees or officers might outnumber the officers of the bank, and impose burdens on the bank which would ruin it; and thus the bank would be controlled, not by its officers, but by outsiders. The officers of a bank can not delegate their powers to others. It is therefore clear that a national bank can not be a partner in a co-partnership, and can not incur a partnership liability.

The same has been held as to corporations in this state (*Geurinck* v. *Alcott,* 66 Ohio St., 94). The first subdivision of the syllabus was omitted by mistake of printer, but is found in the head note, and also in the index, and is as follows: ''A corporation can not be a member of a partnership.''

But it is contended, that while a national bank can not become a partner generally, that where it becomes the owner of a share in an existing partnership, like this Elsmere Syndicate, that in effect it becomes a partner and liable as such. That begs the question. If it had the power to become a partner, such might be the case, but not having the power, it can not go beyond its powers, and can not by any act make itself a partner, and can not incur a partnership liability.

Cases are cited in which a bank has taken some specific piece of property, as a ship for instance, to secure a debt, and has been held liable for the expenses of managing or converting such property; but such expenses were incurred by the bank, and were its individual debt, and not the debt of a partnership. With such cases we fully agree, but in those cases it does not appear that the bank was hampered by a lack of power, as is the case under our national banking act. *Royal Bank of India's Case,* L. R. 4, Ch. App. Cas., 252.

Not having the power to enter into such partnership, it is well settled that the bank may plead such want of power to defeat an attempt to hold it as such partner. *California Bank* v. *Kennedy,* 167 U. S., 362.

It is further urged that the bank partly realized on some of these shares, and held itself out as partner, and that it is therefore estopped from now claiming that it was not such partner.

That the realizing on stocks by receiving dividends does not create an estoppel was held in the above cited case of *Bank* v. *Kennedy*, 167 U. S., 371. In the case of *Scott* v. *Deweese*, 181 U. S., 217, the court, near the close of the opinion hold:

"Of the powers of a national bank under the statutes providing for their creation, every one must take notice."

Every one is therefore chargeable with knowledge that a national bank can not be a partner, and therefore this bank could not hold itself out as being that which in law it could not be, and its acts in that behalf could deceive no one, as no one could in law rely upon such acts. One can not rely upon a representation which he knows to be false or impossible.

The bank having become the owner of these nine shares, and not having the power to become a partner, it became in legal effect, a part owner of the property of the syndicate, which ownership was in its nature several, and the bank, through its trustee, having managed this several interest in connection with the trustees of the other shares as to their interests, the bank became and is liable for its said share of the expenses of purchasing, managing, handling, holding, improving and disposing of the property. The bank is thus liable for nine fortieth parts of the debts and expenses remaining after applying the proceeds of the property upon the indebtedness.

The record does not clearly furnish the data from which this amount can be ascertained by this court, and therefore the judgment against the plaintiff in error will be reversed, and the cause remanded to the circuit court with instructions to ascertain what nine-fortieth parts of said debts and expenses amount to, and render judgment against said bank for that sum, and also for nine-fortieth parts of the costs.

*Judgment reversed and cause remanded.*