Argued December 20, 1934; affirmed February 19, 1935

# HIBERNIA SECURITIES CO. *v.* PIRIE
## (41 P. (2d) 431)

*R. R. Morris,* of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for appellant.

*Roy F. Shields,* of Portland (Maguire, Shields & Morrison, of Portland, on the brief), for respondent.

BAILEY, J. The plaintiff brings this action as assignee of the state superintendent of banks to recover from the defendant, a stockholder in the Hibernia Commercial & Savings Bank, the super-added liability imposed by § 3 of article XI of the constitution of the state of Oregon.

To each of the three affirmative answers of defendant to the complaint the plaintiff interposed demurrers on the ground that the same did not state facts sufficient to constitute a defense, and when the demurrers were overruled the plaintiff elected not to plead further. Judgment on the pleadings in favor of the defendant was entered, and the plaintiff appeals.

The amended complaint alleges that in 1892 the Hibernia Savings Bank was incorporated under the laws of the state of Oregon, to engage in a general banking business, and in 1920 its name was changed to "Hibernia Commercial & Savings Bank". It will hereinafter, when necessary to distinguish it from the Hibernia Bank, later organized, be referred to as the original bank. Its capital stock was then $200,000, consisting of 2,000 shares of the par value of $100 each.

In May, 1928, the capital stock of the bank was increased to 5,000 shares of the par value of $100 a share. Later in the same month the board of directors of said bank declared a stock dividend of 50 per cent upon the capital stock of the bank as the same stood at the

close of business on April 30 preceding, before the capital stock had been increased, and in payment of said stock dividend 1,000 shares of the authorized increase of 3,000 shares were issued "as fully paid stock for undivided profits", and distributed *pro rata* among the shareholders of the bank of record at the close of business on April 30, 1928.

On May 18, 1931, the defendant Rose Pirie owned 70 shares of the new issue of the capital stock of the bank, which she still held on December 18, 1931, at the time the bank closed its doors.

On the latter date, the complaint alleges, the bank was insolvent and has ever since that date remained insolvent, and at said time and ever since, the assets of the bank were and are "insufficient to pay its deposit liability" and said deficiency of assets necessary to pay the depositors of said bank was in excess of $300,000, that amount representing the increase of capital stock. This is the only material allegation of the complaint traversed by the answer.

The board of directors of the bank on December 19 of the same year passed a resolution in which it was recited that the affairs of the bank had been thoroughly reviewed and considered by the board of directors in collaboration with the state superintendent of banks, and, "it appearing that its resources have become seriously impaired, more particularly with respect to depreciation of its bonds in the existing unprecedented depression of securities generally, and particularly listed bonds", it was therefore concluded that the business and assets of the bank be placed in the possession and control of the superintendent of banks as of the close of business on December 18, 1931, to be liquidated as provided by law. It is averred

that the bank was duly closed, without first paying its deposit liability, and that the superintendent of banks proceeded to liquidate and wind up the affairs of the bank and collect its assets; that on December 31 of the same year that officer levied an assessment in the amount of $300,000 "for the amount of such deficiency of assets" of said bank "necessary to pay depositors of said bank, against the capital stock of said bank, represented by said increase of capital stock, in pursuance of law". A copy of the order of assessment recites the increase in the bank's capital, gives the names of the stockholders and the number of shares owned by each, and continues as follows: "Now, therefore, in consideration of the above and in accordance with the provisions of § 31, chapter 278, Oregon Laws 1931, I, A. A. Schramm, superintendent of banks of the state of Oregon, hereby levy an assessment upon each of the above-listed stockholders * * * individually and not one for another, for the benefit of the depositors of said bank, for the amount of their stock to the par value thereof * * *."

The Hibernia Securities Company, hereinafter to be referred to as the securities company, in November, 1928, was incorporated under the laws of the state of Oregon and until March, 1932, all of its stock was owned by three trustees for the benefit of the stockholders of the bank in proportion to their respective holdings. On March 12, 1932, the capital stock of the securities company was increased so as to authorize the issuance of 160,000 shares of preferred stock of the par value of $10 per share, and 5,000 shares of common stock of the par value of $20 each. About this time the trust agreement under which the stock was held was dissolved and the common stock of the securities company was issued to the stockholders of the bank so that each

received one share of common stock in the securities company for every share of stock in the bank owned by him.

After the bank closed the superintendent of banks submitted to the circuit court for Multnomah county a plan whereby all the assets of the original bank and the super-added liability of the stockholders of that bank should be transferred to the new bank in consideration of the latter's assuming all the liabilities of the original bank to its depositors and giving credit on its books to the extent of 100 per cent to the depositors of the original bank, except that those depositors who might not agree to the plan should be paid in cash on demand. The new bank was, as a part of the plan, to convey to the securities company certain of the assets obtained by it from the original bank and the liability of the stockholders of the original bank. In exchange therefor the securities company would issue to all depositors of the original bank who consented to the plan certificates for the number of shares of preferred stock in the securities company which would equal at par 30 per cent of the deposit liability of the original bank to such depositors, and would deliver said certificates to the new bank to be turned over to such depositors. Upon receipt of the certificates the new bank would credit to the securities company an amount equal to the shares of stock so delivered and would charge the several accounts of the consenting depositors with appropriate amounts and deliver the stock certificates to them. As a part of this plan the securities company was to accept as payment in full of the deposit obligations to be credited to it certain property and rights which the new bank had secured from the original bank, and in addition thereto the liability of the stockholders of the original bank.

The circuit court on May 14, 1932, approved this plan. Thereupon the transfer of the property and the stockholders' liability was duly made, liabilities assumed and credit given, as approved by the court, and the securities company issued its preferred stock to depositors of the original bank who had consented to the plan, so that each of said depositors obtained a number of shares of preferred stock of the securities company in accordance with the plan. No preferred stock in the securities company was issued to any one other than a depositor of the original bank.

The amended complaint further alleges that the defendant has not paid any part of the assessment on her stock, amounting to $7,000, and judgment for that amount is asked, together with interest at 6 per cent from January 31, 1932, and attorneys' fees.

The first affirmative defense alleges that 42 of the 70 shares of stock in the original bank referred to in the amended complaint were issued by said bank to the defendant as a stock dividend pursuant to a resolution of the board of directors of the original bank adopted May 9, 1928; that said defendant had never subscribed for the said 42 shares of stock and had obtained the same only as a stock dividend; and that "by reason thereof said shares of stock were not subject to assessment by the superintendent of banks".

The second affirmative defense avers that after the closing of the original bank the board of directors thereof, acting as such directors and on behalf of the stockholders of the bank, entered into negotiations with the depositors of the original bank for the purpose of working out a plan for the reorganization and reopening of that bank, and on February 15, 1932, the board submitted to each of the depositors of the original bank a letter in which it was recited that the board

had, since the closing of the bank, been working on plans for "its reopening and reorganization along lines that would make the bank free of slow assets and outstandingly strong in quick assets and cash reserves". The three-point plan outlined was as follows: (1) unimpaired capital fund of $500,000 cash; (2) seventy per cent of each individual deposit to be placed to the depositor's credit upon the opening of the bank; and (3) the remaining 30 per cent to be represented by preferred stock in a liquidating and holding company which would be "operated in connection with the bank and would be authorized to pay out the proceeds of the above assets as realized" up to the amount of the depositors' subscriptions for stock in the holding company. Other matters contained in this plan proposed by the board of directors need not be referred to at this time. They seem to have contemplated the reopening of the original bank.

Accompanying the proposal was a document referred to as "depositors' agreement" to be signed by such depositors as acquiesced. Within 60 days from February 15 more than 11,000 of the depositors of the original bank, representing deposits of over $4,500,000 or 90 per cent of the total deposits, executed and delivered the said depositors' agreement.

The board of directors of the original bank by resolution declared a reorganization and reopening practicable and thereupon opened negotiations with the Reconstruction Finance Corporation for a loan, and obtained from that body a letter of approval of the plan. Due to the great amount of detail and legal work required in connection with the reorganization, additional time was desired for perfecting the plan, and on April 11, 1932, at the instance of the board of directors

of the original bank the depositors signed an agreement extending the time 30 days.

Prior to April 4, 1932, the securities company applied to the Reconstruction Finance Corporation for a loan not to exceed $600,000, the proceeds thereof to be paid into the new bank and used as capital, surplus and undivided profits, and in support of that application the superintendent of banks on April 4 requested of the Reconstruction Finance Corporation that said loan be made, and in that request set forth a list of the collateral proposed to be furnished by the securities company to secure the repayment of the loan, but did not include therein the liability of stockholders of the original bank.

Resolutions in support of the ratification of the reorganization plan submitted by the board of directors were adopted by the stockholders of the original bank at a meeting held in April, 1932, at which the owners of more than two-thirds of the capital stock in said bank were represented.

On or before May 14, 1932, in furtherance of the reorganization plan, a new corporation, known as the Hibernia Bank, was organized. Its entire capital stock, except qualifying shares of directors, was owned by the securities company. The superintendent of banks, then in possession and control of the property and assets of the original bank, transferred to the new bank all the assets, properties, rights and interests owned by the original bank on December 19, 1931, and at the same time transferred to the new bank the liability of the stockholders of the original bank, which liability had not been mentioned in the agreement between the original bank and its depositors. The new bank in exchange for such property and rights assumed and

agreed to carry out all the obligations of the depositors' agreement and undertook to, and did, immediately give credit on its books to the extent of 100 per cent to all depositors of the original bank, except those who did not sign the deposit agreement and were paid in cash.

Simultaneously with the execution of the contract between the superintendent of banks and the new bank the original bank and the new bank entered into a contract whereby the original bank sold, assigned and transferred to the new bank all the original bank's right, title and interest in and to the property transferred or attempted to be transferred by the superintendent of banks to the new bank, with the exception of the stockholders' liability. In consideration of this transfer by the original bank to it, the new bank agreed to perform all the obligations of the depositors' agreement. At the same time the two contracts were executed, that between the superintendent of banks and the new bank and the one between the original bank and the new bank, the securities company and the new bank entered into a contract whereby the securities company agreed to issue to all the individual depositors of the original bank who had theretofore signed the deposit agreement certificates for the number of shares of preferred stock of the securities company which would equal at par 30 per cent of the liability of the original bank to such depositors, and to deliver those certificates to the new bank to be by it delivered to such depositors. The new bank agreed, upon the receipt of such certificates and upon receipt of the signed agreement by the several depositors, to credit to the securities company an amount equal to the par value of the shares so delivered and charge the several accounts of the signing depositors with appropriate amounts, and to deliver said stock certificates to the respective de-

positors entitled to them. The securities company agreed that it would accept in full payment of the deposit obligations so to be credited to it a transfer of certain property and rights of the new bank, consisting of loans and discounts, bonds and warrants, real estate, stocks, claims and judgments, aggregating in excess of $1,700,000, "as well as the alleged liability of the stockholders" of the original bank.

It is further averred that "all the terms, provisions and conditions of each of the contracts mentioned in this affirmative answer were duly performed and carried out by each of the parties thereto" and that each depositor of the original bank who had signed the depositors' agreement had received payment in full for his deposit claim against the original bank by receiving 70 per cent thereof in cash and applying the remaining 30 per cent to the purchase of and payment for preferred stock in the securities company.

The third affirmative defense alleges that the only liability, contingent or fixed, ever incurred by the defendant by reason of ownership of stock in the original bank was for the benefit of depositors of said bank; that such liability can be enforced only by an action brought by or for the sole use and benefit of such depositors; that by reason of the facts alleged in the second affirmative answer which are incorporated in and made a part of the third affirmative answer, with the exception of one paragraph, this action was not brought for their benefit; that the plaintiff is not the real party in interest and has no capacity to sue with respect to such liability; that there never has been an actual determination as to whether or not the defendant became liable to the depositors; and that therefore the action has been prematurely brought and should be abated.

The main controversy presented by this appeal involves the construction of § 31, chapter 278, Oregon Laws, 1931, which is an amendment of § 22-2101, Oregon Code 1930, and as far as material here reads as follows:

"When the superintendent of banks has taken possession of any bank or trust company for liquidation it shall be his duty to levy an assessment upon the stockholders of said bank or trust company for the amount of their liabilities, as provided by the constitution. For the purposes of such assessment the insolvency or closing of any bank or trust company for liquidation without first paying its deposit liabilities in full shall be *prima facie* evidence that the assets of such bank or trust company are insufficient to pay its deposit liabilities by an amount at least equal to the capital of such bank or trust company. If any stockholder fails or neglects to pay such assessment within 30 days from the date such levy is made, the superintendent of banks may institute proceedings in his name for the collection of the amount of such assessment. * * * The amount of such assessment shall bear interest at the rate of 6 per cent per annum from the date it is collectible. The action or suit to collect such liability may be brought at any time within three years from the date such assessment is levied. * * * The liability of any stockholder on account of any such assessment may be compromised or sold by the superintendent of banks with the approval of the circuit court in the same manner as other assets of said bank. After the expenses of liquidation and all creditors have been paid in full, any stockholder or stockholders who have paid an assessment under the provisions of this section shall have a prior lien on any assets remaining to the amount so paid and in the proportion paid by each."

It is conceded by both the appellant and the respondent that the superintendent of banks made no independent investigation or determination of the assets and liabilities of the bank before levying assessments against the stockholders of the original bank for their

super-added liability. According to the mandate of the 1931 act it becomes the duty of the superintendent of banks to make an assessment. The mere insolvency or closing of the bank for liquidation without first paying its deposit liability in full is, by provision of the act, made *prima facie* evidence that the assets of such bank are insufficient to pay its deposit liability by an amount equal to the capital of such bank.

The stockholder is given 30 days within which to pay the assessment levied against him, and unless the assessment is paid within that time it becomes the duty of the superintendent of banks to institute proceedings to collect the same, and the amount of such assessment bears interest at the rate of 6 per cent beginning 30 days after the levy. There is no provision whereby the superintendent of banks is authorized to make a levy for less than the total liability imposed by the constitution upon the stockholders of the bank. Only one levy is contemplated by this 1931 amendment. A stockholder who pays his assessment is given a lien to the amount paid by him, upon assets remaining after all the expenses of liquidation and all the creditors have been paid.

It is the plaintiff's contention that when action is brought to collect the assessment any stockholder may put in issue the question of the bank's insolvency and have determined in such proceeding the amount of its assets and liabilities and the amount necessary to be paid by the stockholders of the bank in order to make up any deficit to the bank's depositors after all the assets of the bank have been applied to the claims of such depositors. On the other hand, the defendant argues that the 1931 act, if constitutional, by its terms prevents stockholders of a defunct bank from trying in an action for the collection of assessments against them the question of insolvency of the bank or the necessity of the assessment, and that their remedy is

limited to a *pro rata* share in the assets remaining after the expenses of liquidation and the creditors of the bank have been paid. By placing such a construction on this act the defendant contends that her liability as a stockholder has been increased, thereby rendering the act unconstitutional as violative of provisions of both the state and federal constitutions against the enactment of laws impairing the obligations of contracts: Article I, § 10, constitution of the United States, and article I, § 21, constitution of Oregon.

At the time the defendant became the owner of the 70 shares of stock, part as a stock dividend and the balance by purchase, § 22-2101, Oregon Code 1930, was operative. This section required the superintendent of banks, upon discovering that the assets of a bank were insufficient to pay its deposit liability, to ascertain the amount of such deficiency and to levy an assessment upon the stockholders of the bank for the amount of such deficiency, not exceeding their liabilities. In the event that the original assessment was less than the full liability of the stockholders, then the superintendent of banks was granted authority, if necessary to pay the deposit liability, to levy further assessment in the same manner that the original assessment was made.

When our constitution was adopted § 3 of article XI read as follows:

"The stockholders of all corporations and joint stock companies shall be liable for the indebtedness of said corporation to the amount of their stock subscribed and unpaid and no more."

In 1912, however, this section was amended by adding thereto the following:

"Excepting that the stockholders of corporations or joint stock companies conducting the business of

banking shall be individually liable equally and ratably and not one for another, for the benefit of the depositors of said bank, to the amount of their stock, at the par value thereof, in addition to the par value of such shares.''

■ The liability of stockholders in banks organized under the laws of many states, as well as federal statutes, is controlled entirely by legislative enactment without reference to constitutional provisions. Therefore, in construing the enactments imposing liability on stockholders and its enforcement we are not confronted with the difficulty of attempting to reconcile statutory measures for enforcing the liability with constitutional provisions creating such liability. In other words, if the liability and its enforcement are created by legislative act, the entire enactment will be construed as a whole in determining the stockholders' ultimate liability. To state the matter in still another way, had the provisions of the constitution imposing liability upon the stockholders been a part of the act of 1931 (§ 31, chapter 278, Oregon Laws, 1931), the liability of stockholders would be determined by construing the legislative enactment in its entirety, and what might appear to be contradictory provisions could be reconciled, rather than by attempting to oppose statutory enactment to constitutional provision.

In considering the question now before us it should be borne in mind that the defendant herein acquired ownership of her stock prior to the 1931 amendment and that in many of the cases discussing the liability of stockholders the law was in effect at the time the stock was purchased.

One of the earliest adjudications referring to liability of a stockholder and the procedure for determining the same is *Kennedy v. Gibson*, 75 U. S. 498

(19 L. Ed. 476). By the act of Congress of June 3, 1864, it was provided that shareholders of national banks "shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of their stock therein * * *'' The same act conferred upon the comptroller of the currency power to administer the law and to levy assessments against the stockholders of a bank. In that instance it was held that the question of the insolvency of the bank and the necessity and extent of assessments had been referred by the act to the judgment and discretion of the comptroller and that his determination of the matter was conclusive and not to be controverted by the stockholders. The determination of this question by him, it was held, "is indispensable, whenever the personal liability of the stockholders is sought to be enforced, and must precede the institution of suit by the receiver". It was further held that the liability of stockholders is several and not joint and that when the whole amount of liability is sought to be recovered the proceeding must be at law, while if less is required, the proceeding may be in equity. In speaking of the delay incident to exhausting all the assets of the bank before the stockholders could be assessed, the court observed:

"It would be attended with injurious consequences to forbid action against the stockholders until the precise amount necessary to be collected shall be formally ascertained. This would greatly protract the final settlement, and might be attended with large losses by insolvency and otherwise in the intervening time. The amount must depend in part upon the solvency of the debtors and the validity of the claims. Time will be consumed in the application of these tests, and the results in many cases can not be foreseen. The same remarks apply to the enforced collections from the stockholders. A speedy adjustment is necessary to

the efficiency and utility of the law; the interests of the creditors require it, and it was the obvious policy and purpose of Congress to give it. If too much be collected, it is provided by the statute, that any surplus which may remain after satisfying all demands against the association, shall be paid over to the stockholders. It is better they should pay more than may prove to be needed than that the evils of delay should be encountered.''

In *United States ex rel. v. Knox,* 102 U. S. 422 (26 L. Ed. 216), the court, with reference to the method to be followed by the comptroller in making the assessment under the foregoing act of Congress creating liability of the stockholders, said:

''In the process to be pursued to fix the amount of the separate liability of each of the shareholders, it is necessary to ascertain (1) the whole amount of the par value of all the stock held by *all the shareholders*; (2) the amount of the deficit to be paid after exhausting all the assets of the bank; (3) then to apply the rule that each shareholder shall contribute such sum as will bear the same proportion to the whole amount of the deficit as his stock bears to the whole amount of the capital stock of the bank at its par value. There is a limitation of this liability. It can not in the aggregate exceed the entire amount of the par value of all the stock.

''The insolvency of one stockholder, or his being beyond the jurisdiction of the court, does not in any wise affect the liability of another; and if the bank itself, in such case, holds any of its stock, it is regarded in all respects as if such stock were in the hands of a natural person, and the extent of the several liability of the other stockholders is computed accordingly.''

It will be observed that the act of Congress above referred to imposes liability upon the stockholders for all the debts of the bank and is not limited to the deposit liability. It will further be noted, as already

pointed out, that the act imposing the liability also directs the method to be followed in enforcing it. In the case last quoted from the court approved and reaffirmed the rule laid down in *Kennedy v. Gibson,* supra, and *Casey v. Galli,* 94 U. S. 673 (24 L. Ed. 168), to the effect that the determination by the comptroller as to the amount and necessity of the assessment was conclusive. In passing, it might also well be said that under the federal act successive assessments might be made, as long as the aggregate amount thereof did not exceed the total liability of stockholders.

In *State Bank of Portland v. Gotshall,* 121 Or. 92 (254 P. 800, 51 A. L. R. 1200), this court, in construing the Oregon statute conferring upon the superintendent of banks the power to levy an assessment upon discovering that the assets of a bank were insufficient to pay its liabilities, held that the determination of the superintendent of banks as to the necessity of the assessment was final and conclusive and based that opinion upon decisions of the federal courts relative to the effect of the action of the comptroller.

Let us analyze in detail the provisions of § 31, chapter 278, supra. We find in it the following important features: (1) assessment is to be made before there has been any determination of whether or not such assessment will be necessary to discharge the liability to depositors; (2) only one assessment of 100 per cent of the par value of stock is contemplated, regardless of the amount actually needed to satisfy the deposit liability; the ratio of the bank's capital to its deposit liability is ignored; (3) the superintendent of banks is shorn of all judicial or *quasi*-judicial power to determine the bank's financial condition and is required to levy an assessment upon the closing of the bank even though he should find that

the bank's assets are sufficient to meet all deposit liability; (4) the closing of the bank's doors by order of the board of directors without first paying its deposit liability in full, even though such act be taken without the consent and against the will of the stockholders, necessitates the levy of an assessment of 100 per cent; (5) the assessment must be made in the event of the insolvency of the bank, even though the bank's assets are sufficient to pay the deposit liability, if they are insufficient to pay in addition thereto other claims against the bank; and (6) the stockholder paying the assessment may find that the money so paid by him is used in payment of the expenses of liquidation and the general claims of creditors, as the contribution made by him is not limited in its application to his *pro rata* share of the liability to depositors.

It is, however, urged by the plaintiff that in any suit brought for the collection of the super-added liability the stockholder may have a judicial determination as to the amount which he must contribute toward the payment of the bank's liability to its depositors. In such a proceeding, according to the plaintiff's contention, there would be the presumption, created by the 1931 act above cited, that the assets of the bank were insufficient to pay its deposit liability by an amount at least equal to the capital of such bank. This presumption could be overcome by evidence proving a state of facts contrary to those which the law presumed.

The amendment enacted in 1931 would, according to plaintiff's contention, tend to retard rather than expedite the liquidation of banks taken over by the superintendent of banks. In each instance where suit was brought on assessment the court would have to determine the amount of assets and the deposit liability, and in doing so would have to ascertain how

much could be realized on the slow assets of the bank, as well as the probable outcome of pending and contemplated litigation by and against the superintendent of banks. In all such determinations the results might vary. It might well be that one stockholder would have to pay the full assessment, and others, varying amounts. Under such circumstances the stockholders are not liable "equally and ratably and not one for another", as specified in the constitution.

The presumption created by making certain conditions *prima facie* evidence applies to the imposition of the assessment and not to its collection. This presumption continues until the liquidation proceedings are completed and can be negatived or qualified only by the presence of a surplus of assets at the conclusion of the proceedings.

It is inconceivable that the legislature intended by the amendment of 1931 to prolong the period of liquidation of insolvent banks. The tendency in legislation was to expedite procedure whereby delays might be avoided and depositors and other creditors of the bank paid as quickly as possible. By the amendment of 1931 the legislature undoubtedly sought to authorize the superintendent of banks without delay incident to detailed accounting, appraisals and adjustments required under the existing law, to levy an assessment immediately upon the closing of a bank. In order to accomplish this, some method of fixing the amount of the assessment had to be prescribed and the legislature substituted an arbitrary presumption for actual inquiry and exercise of judgment on the part of the superintendent of banks. By providing that stockholders paying their assessments should have a prior lien on any assets remaining after the creditors and deposi-

tors had been paid in full, actual results were thereby undertaken to be substituted for pre-liquidation estimates in determining the amount necessary to be assessed against the stockholders.

The 1931 amendment provided that "for the purpose of such assessment the insolvency or closing of any bank" should be *prima facie* evidence that the assets of the bank were insufficient to pay its "deposit liability by an amount at least equal to the capital of such bank". By § 22-1901, Oregon Code 1930, it is provided that a bank shall be deemed insolvent when either of the following conditions exists: "(1) When the actual cash market value of its assets is insufficient to pay its liabilities; or (2) when it shall fail to make good its reserve as required by this act." The capital of a bank under § 22-1802, Oregon Code 1930, is deemed impaired when the actual cash market value of the assets of such bank is insufficient to pay its liabilities plus the amount of its paid-up capital stock. Under that section, when there is an impairment of the capital of the bank and the institution fails to make an assessment sufficient to cover the impairment, it becomes the duty of the superintendent of banks immediately to close the bank, take possession of its assets and proceed with its liquidation. We therefore find that by reference to other sections of the banking act the bank may be insolvent or closed by the superintendent of banks when its assets are amply sufficient to pay all its deposit liability. To make insolvency of a bank, as defined by the banking act, or its closing, *prima facie* evidence that its assets are insufficient to pay its deposit liability in an amount at least equal to its capital stock is to disregard the fact that the law declares a bank insolvent or requires its closing in instances in which its assets are actually sufficient to pay all deposit

liability. In other words, there is no factual relationship between the insolvency of a bank or its closing and the amount of deficiency of its assets to discharge its deposit liability.

In April, 1929, the supreme court of North Carolina in *Corporation Commission v. Murphey,* 197 N. C. 42 (147 S. E. 667), held that a stockholder was not denied due process of law by the method prescribed for the collection of assessment on his bank stock. The law there under consideration provided that after the expiration of 30 days from the date of taking possession of any bank the corporation commission should levy an assessment equal to the stock liability of each stockholder in the bank. The law further provided that the stockholder might appeal to the superior court from the levy of any assessment, and issues raised by such appeal should be determined as in other actions in that court. There the statute did not specifically provide for a determination by the corporation commission. No question was presented in that case as to increasing the stockholders' liability.

Whether or not the Oregon superintendent of banks in preparing the amendment of 1931 and the legislature in enacting the same had the North Carolina law in mind is a matter of conjecture. It is, however, instructive in construing our statute to ascertain what the North Carolina supreme court says concerning what may be decided on an appeal from an assessment made by the corporation commission. We find in the case of *Corporation Commission v. McLean,* 202 N. C. 77 (161 S. E. 854), the following:

"The only issues of fact which may be raised by such appeal and determined in the superior court, ordinarily, are: (1) Was the appellant a stockholder of the insolvent banking corporation at the date of his assess-

ment? (2) If so, how many shares of the capital stock of said corporation did appellant own at said date?

"The answers of the jury to these issues will be sufficient, ordinarily, to support a judgment of the superior court, disposing of the appeal. Only in rare cases, if any, can matters not involved in these or similar issues be injected into the trial in the superior court of an appeal from an assessment made as provided by statute to enforce the individual liability of a stockholder of an insolvent banking corporation."

In the case of *Schwenker v. Bekkedal,* 204 Wis. 546 (236 N. W. 581), the court was called upon to construe an amendment to the Wisconsin banking law made in 1915, providing that the liability of a stockholder should accrue and become due and payable forthwith upon the banking commissioner's taking possession of the property and business of such bank, and could be enforced by him in an action brought in his name in the circuit court for the county in which the bank was located. The law further specified that in the event of liquidation the stockholder should, after the expenses and claims of creditors were paid, be entitled to reimbursement out of any remaining property of the bank. The question arose in the case last cited as to whether or not a stockholder of the bank could in an action for the collection of an assessment against him have determined the necessity of the assessment and the amount he should be required to pay. The court held that the law contemplated only one action on the assessment and that for the full amount. With reference to this matter the opinion continued:

"The statute thus clearly contemplated that the amount accrues and becomes due and the commissioner may demand it and bring suit to collect it immediately upon the commissioner's taking possession of the bank. Its construction hinges upon the meaning to be given to the words 'such liability'—whether they mean the

par value liability to which the stockholder may be subjected if conditions warrant, or the precise amount of liability to which he actually is to be finally subjected under the conditions that develop. Manifestly the extent of this actual final liability cannot 'forthwith' be ascertained or even approximated. The statute clearly contemplates that suit to recover the amount of the liability contemplated may be commenced 'forthwith'. It is to be presumed that the amount for which suit may be brought was contemplated as an amount certain and the only amount certain then conceivable is the par value limit of liability. The statute contemplates only a single action to recover the individual stockholder's liability, and the action contemplated is an action at law against the individual stockholder. In such actions only one judgment is regularly recoverable. This construction is aided somewhat by the language of the latter portion of the section which provides expressly for refunding to stockholders paying their statutory liability before any assets remaining after payment of creditors are distributed among stockholders. This necessarily contemplates collection of amounts on the stockholder's liability above what is necessary to pay debts, and at least indicates that enforcement of the stockholder's liability was not contemplated as limited to the amount to which he may eventually be subjected. * * * These considerations lead us to conclude that the liability that accrues on the commissioner's taking possession on which he may bring suit forthwith is the par value liability. The stockholder overpaying his liability as finally determined will of course be entitled to a refund of the excess paid.''

■ We have directed attention to the North Carolina and Wisconsin decisions for the purpose of refuting the contention of the plaintiff that in a trial for the collection of assessment against the defendant she would have a right to seek a determination of the necessity of the levy and the amount of her liability. We hold that it was never the intention of our legislature that these questions should be determined in such an action. It

was intended that the stockholder should pay his entire assessment and look to the assets remaining after all creditors of the bank had been paid, for a refund.

 In the cases above cited the question of enlarging the stockholder's liability was not involved. Here it is contended by the defendant, and, we think, with reason, that the procedure adopted, if valid, would increase the liability of a stockholder who had purchased his stock before the effective date of the amendment. At the time the defendant acquired her stock, "the constitution of the state and all valid laws then in force" were incorporated in the contractual obligation assumed by her: *Haberlach v. Tillamook County Bank,* 134 Or. 279 (293 P. 927, 72 A. L. R. 1245). She was then liable with other stockholders *"equally and ratably* and not one for another" for the benefit of the *depositors* but not other creditors of the bank, to the amount of her stock at the par value thereof "in addition to the par value of such shares". By the 1931 amendment the liability of stockholders was attempted to be increased by making them responsible to all creditors of the bank, and in effect by making them liable one for another to the extent of their super-added liability.

The fund paid in by the stockholders under the 1931 amendment is not preserved for the benefit of depositors. Nor is the fact that some of the stockholders may be insolvent or their assessment not collectible taken into consideration. As stated in *United States v. Knox,* supra, the insolvency of one stockholder should not in any way affect the liability of another.

We therefore hold that § 31 of chapter 278, Oregon Laws, 1931, is unconstitutional and void as to those stockholders who purchased their stock prior to the effective date of the 1931 amendment, as impairing the obligation of their contract in violation of the federal

and state constitutional provisions hereinbefore cited. The change in the law attempted in 1931 was more than a change in procedure. It affected substantial rights of the defendant by imposing additional liability upon her. There has not been any determination, either by the superintendent of banks or by a court, as to the necessity of the assessment here under consideration. The law does not confer upon the assignee of the superintendent of banks authority to make such determination.

We have considered all the questions raised by the appellant and the respondent on this appeal, but the disposition which we have made of the case obviates our discussing those which have not herein been mentioned.

The judgment appealed from is affirmed.

ROSSMAN, J., not sitting.

BELT, J., dissents.