# THE SUPREME COURT

OF

# OREGON.

## MARCH TERM, 1885.

[Filed March 9, 1885.]

## CITY OF PORTLAND *v.* CHARLES SCHMIDT.

MUNICIPAL CORPORATION—ORDINANCE—ULTRA VIRES—REPEAL.—Where a city council passed an ordinance which was void because beyond its power to enact, and connected with it a provision repealing all ordinances in conflict therewith, such repealing clause cannot have the effect to repeal ordinances which conflict only with the void provisions of the later ordinance.

SAME—POWER OF CITY COUNCIL.—The city of Portland can exercise only such powers as are conferred by its charter; but when an express power is granted, the power necessary to carry it into execution is implied.

SAME—LICENSE TO DRINKING-SHOPS.—The power to license, tax, regulate, and restrain bar-rooms and drinking-shops carries with it, without any express provision, authority to provide by ordinance the terms and conditions upon which such license should be issued, the amount of tax to be imposed, and the mode of collecting it, and to establish reasonable rules to be observed in conducting the business, and implies the power to inhibit the carrying on of that kind of business without obtaining such license.

SAME—POWER TO LICENSE NOT POWER TO PROHIBIT.—Under a provision authorizing the council to restrain intoxication, and a clause to provide for the good order of the city, the council has power to prohibit the sale of liquor on particular days or at particular places—such as upon a

OREG. XIII.—2

street—but not to prohibit its sale generally, nor to license to sell, except in the case of keeping a bar-room or drinking-shop.

SAME—TITLE OF ORDINANCE TO AID IN CONSTRUCTION.—The title of an ordinance may be resorted to to aid in ascertaining the intention of the council.

SAME—LICENSE FEE.—The power to license implies the power to fix the amount of the license fee, subject only to the restriction that it shall not be so large as to show an evident intention to prohibit altogether the acts to be licensed.

SAME—MISDEMEANOR.—The city council of Portland has no power to declare a violation of any city ordinance a misdemeanor.

MULTNOMAH COUNTY.    Defendant appeals.    Affirmed.

*George H. Williams* and *F. V. Drake,* for Appellant.

*O. F. Paxton* and *R. M. Dement,* for Respondent.

THAYER, J.    This appeal is from a judgment of conviction of the appellant for the violation of certain ordinances of the city of Portland, inhibiting the sale of liquor, etc., without license.    The case originated in the police court of the city, in which the appellant was accused, by a written complaint, duly filed, with having violated ordinance No. 3720 and ordinance No. 3744. The latter ordinance purports to be an amendment of the former.    The substance of the accusation was, that appellant, being the keeper of a drinking-shop at a certain place in the city, did, on the ninth day of May, 1883, at such place, the same being then and there occupied by him, to be drank on the premises, sell to one W. Rott malt liquor, to wit, one gill of beer, for five cents, without having obtained a license therefor, etc.    The appellant, after having demurred to the complaint in the police court, and after the demurrer had been overruled by that court, interposed a plea of " not guilty."    A trial was had thereon, resulting in the appellant's conviction, and upon which judgment was entered.    An appeal was taken from the judgment to the circuit court for the

county of Multnomah, and the appellant was again con-
victed, and the judgment from which this appeal was
taken was rendered against him.

There seems to have been no controversy, upon the
facts, in the latter court.   The appellant's counsel ad-
mitted all the material allegations of fact in the com-
plaint.   Numerous points of law were raised, but they
were mainly against the validity of said ordinances; and
I cannot see that there are any other questions to be con-
sidered by this court.   The complaint seems to be suffi-
cient, unless the ordinances are deemed invalid.   The
original ordinance, ordinance No. 3720, appears to have
been approved by the mayor of the city March 8, 1883,
and the amendatory ordinance, No. 3744, to have been so
approved April 6, 1883.   The latter only purports to
amend two sections of the former—sections 1 and 5 there-
of.   The attempted amendment of section 1 is very slight.
The amount of license to be paid into the city treasury
is $500 per annum, instead of $200 per quarter year, and
the proviso that a license may be issued to sell beer and
malt liquor for the sum of $50 per quarter, subject to
conditions, etc., which was contained in the former, was
left out of the latter.   But the amendment of section 5 is
very material, and I believe the objections urged by the
appellant's counsel are more strongly against that amend-
ment than any other parts of them.   None of the objec-
tions which they have raised could have been made to
said section 5 as it stood originally.   It was then a simple
provision to the effect that a license should not issue un-
til the applicant should file with the auditor the receipt
of the treasurer for the amount of such license; but by
the amendment, it has attached to it the condition that
he shall also file a bond in the sum of $5,000, with sure-
ties of extraordinary character, and to become void only
upon the performance of divers conditions, including a

compliance with the conditions of all ordinances of the city. It is a serious question in my mind whether this provision is not so unreasonable as to render it a nullity, but the view I have taken of the case makes it unnecessary to decide the point. In my opinion, no provisions of the original ordinance which were valid have been repealed or superseded by provisions in the amended ordinance that are invalid. The common council of the city of Portland did not repeal any provision in said ordinance No. 3720, by adopting ordinance 3744, in consequence of conflicting provisions in the two ordinances —if those in the latter are illegal—although the latter ordinance contains a clause to the effect that all ordinances in conflict therewith are thereby repealed. That is the rule in regard to legislative enactments, and there is no reason why it does not apply the same to the adoption of ordinances by a municipal corporation.

In *Harbeck* v. *Mayor of New York City*, 10 Bosw. 366, it was held that, where some provisions of a statute were void for unconstitutionality, a general repealing clause in such statute, repealing all provisions of law in conflict with it, did not repeal provisions which conflicted only with the part that was void. I am convinced that the same result follows where a legislative body attempts to alter a valid section of an act by coupling with it provisions which it has not the power to adopt. Otherwise, the legislative will would be thwarted, as it is presumed that the legislature would not have attempted the change if it had supposed that it was not able to effect it in the manner indicated. A different construction would often result in serious consequences to the public interest. It follows from this, I think, beyond question, that it matters not, so far as this case is concerned, whether the amendment portion of said section 5 is valid or invalid. If it is a nullity, then the section as originally adopted,

and as it stands in said ordinance No. 3720, is valid and complete. This conclusion may, perhaps, place the appellant's counsel in somewhat of a dilemma. If they succeed in proving that certain of the provisions of the amendatory ordinance are illegal and void, they at the same time establish that the provisions of the original ordinance in conflict therewith stand unrepealed and unaffected thereby. They may be able to show that said section 5, as amended, is invalid ; but at the same time they will prove that said section, as originally ordained, is a valid, subsisting provision. So it matters not, for the purposes of this case, whether the latter ordinance is good or bad, and it is entirely unnecessary to determine whether the provision requiring the filing of a bond, as therein provided, is valid or void.

The only question necessary to consider is, whether there was any ordinance in the city of Portland, at the time the appellant sold the gill of beer, regulating and restraining bar-rooms and drinking-shops in that place. It will be observed, from an inspection of the acts of the common council of that city, that strenuous efforts have been made, during the past two years, by the representatives of the people of that town, to regulate and restrain the sale of spirituous and malt liquors. But the logical effect of the argument for the appellant is that those efforts were abortive; that, instead of securing stringent laws for the government and control of those affairs, they have removed all restraint which was upon them, and have completely set them at large. It is claimed that the city of Portland can exercise no powers save such as are expressly conferred by its charter. This is true ; and it might be further claimed that those powers should be strictly construed, upon the principle that all delegated powers are to be so construed. There is another principle, however, which must not be overlooked, and that is,

that when an express power is granted, there is, also, impliedly granted the necessary power to carry it into execution. A grant of power to a person or corporation would be of little avail without the means of exercising it. Thus, the power granted to the common council of the city of Portland to license, tax, regulate, and restrain bar-rooms and drinking-shops, would, without the aid of any express provision, carry with it ample authority to properly exercise that power. The common council was thereby authorized to provide, by ordinance, the manner, and the terms and conditions, upon which such license should be issued, the amount of tax to be imposed, and the mode of collecting it, and to establish reasonable rules and restrictions to be observed in conducting the business of those places. Besides, the power of license implies the power to inhibit the carrying on of business of that character without obtaining such license. It may be true that the city authorities should first adopt a mode by which a license could be obtained before they could enforce a penalty for doing such business without license.

The appellant's counsel claim that said ordinances exceed the authority to license, regulate, and restrain bar-rooms and drinking-shops. I regard this as the real point in the case. There can be no question but that the power of the common council in regard to the sale of liquor extends no further than to license, tax, regulate, and restrain bar-rooms and drinking-shops. There is a provision in the charter empowering the council to restrain intoxication; also a clause to provide for the good order of the city; but they were intended to restrain vicious and immoral acts. The council doubtless have power under them to prohibit the sale of liquor upon particular days or at particular places—such as upon a street—but not to prohibit their sale generally, or to grant license to sell, except in the case of keeping a bar-

room or drinking-shop. It is difficult, however, to define the latter term, though I would naturally suppose that it meant a place where drinks were supplied to customers. The ordinances provide generally that no person or persons shall sell, barter, or deliver any wine, spirituous or malt liquors, to be drank on the premises owned or occupied by him or them, without first obtaining a license, etc. The original ordinance is entitled "An ordinance to provide for licensing bar-rooms and drinking-shops, and to prohibit the sale of liquor without license." The title may be resorted to, I suppose, to ascertain the intention of the common council; and it appears to me that there is enough in the body of the ordinances to indicate that the persons who were prohibited from "selling, bartering, or delivering" the wine or liquor to be drank on the premises owned or occupied by them, and who had not, but might obtain, a license therefor, were persons engaged in keeping such places as the common council might license to sell such beverages to be drank at the place where they were purchased. It was claimed upon the argument that the language employed in the ordinance prohibited, under a penalty, a gentleman from furnishing his guest a glass of wine at his own dinner-table; but we could not conclude that such was the intention of the body which adopted them. I think the ordinances susceptible of a construction different from that. I think they can reasonably be construed to apply to persons engaged in one of the pursuits mentioned in the charter of the city, as the title thereof indicates. It is not probable that an attempt will ever be made to convict any one for a violation of them who is not the keeper of a bar-room or drinking-shop.

It appeared in the present case that the appellant was the keeper of a drinking-shop. It was not directly so alleged in the complaint, but was introductively stated

that such was the fact. No one can read the complaint without concluding that he was engaged in that business. It would, no doubt, have been more certain and satisfactory if the common council had said in the ordinances that no person or persons keeping a bar-room or drinking-shop in the city should sell, etc., without first obtaining a license, etc. In that case, the class of persons the council intended to prohibit from selling without a license, and to grant a license to, upon a compliance with the conditions therein specified, would have been designated with greater certainty. And yet, an attempt to describe the avocation of a person keeping a "drinking-shop" would, where general terms were employed, include the person referred to in the ordinance. He would be a person who sold, bartered, or delivered, to be drank upon the premises owned or occupied by him, wine, beer, or other liquor, without having obtained a license therefor. No one could reasonably suppose from such language that the counsel intended to include a person who, through courtesy, should, upon his premises, deliver to another a glass of wine, beer, or other liquor, to be drank there. The words in the ordinance "without first obtaining a license therefor," and the title of it, precludes such intention. It is the duty of courts to construe acts when they are susceptible of a construction, and to carry out the intention of the legislative body when it can lawfully be done, and not attempt, through a whim or caprice, to defeat it. The courts possess no autocratic powers. Their mission is only to administer the law as they find it. If this court had the making of these ordinances, it would doubtless have made them quite differently; but that authority, under the constitution and laws of the state, has been vested in an organized agency of another co-ordinate branch of the government, which maintains direct relations with a common principal, the people. If

such agency were to overstep the bounds of the authority which it is commissioned to exercise, and attempt to act prejudicially to the rights of persons, it would be the duty of the courts to declare such acts void; but so long as it remains within the prescribed orbit of its power, no matter how indiscreet or impolitic its acts may be, parties aggrieved thereby must seek redress elsewhere than in the courts of justice. In such cases, they will be compelled to submit their cause to that tribunal which must determine all such matters—the bar of public opinion.

The exaction of $500 a year from the licensee is also made a ground of objection against the ordinances; but the courts certainly cannot interfere with them on that account. The right to provide a license tax in such cases has been exercised from time out of mind. The amount required to be paid is necessarily left to the determination of the common council, and the courts have no jurisdiction in the matter, unless the amount be fixed at so large a sum as to make it evident that it was intended as a prohibition of the sale of liquor, or suppression of bar-rooms and drinking-shops. Courts ordinarily have no jurisdiction regarding the exercise of political powers. It is only when the organization charged with the administration of such powers has exceeded its authority that courts of justice are entitled to interfere.

Another ground of objection is the clause in each of said ordinances which provides that any person who shall violate them shall be deemed guilty of a misdemeanor. I have not discovered any authority in the city charter authorizing the common council to declare violations of ordinances a misdemeanor. Subdivision 36 of section 37 empowers the council to provide for the punishment of a violation of any ordinance of the city by imprisonment not exceeding ninety days, or by a forfeiture or penalty not exceeding $300, or both; and that is

as far as I can see that the charter gives the council power in the premises. But it amounts to nothing whatever. No one can be prejudiced by it except the council itself. It perhaps reflects somewhat upon the intelligence of the members of that body. The appellant's counsel also animadverted upon other sections of said ordinance, but I fail to discover how they affect the appellant's case. Sections 2 and 4 thereof provide for the punishment of certain acts that may be committed by any keeper of any bar-room or drinking-shop, and the consequences that shall attend the same, among which will be the forfeiture of his license. The appellant was not accused of the commission of the acts there referred to, nor do we know that any one else will ever be. Those sections have no bearing whatever upon the other sections of the ordinance. They may be an absolute nullity, and sections 1 and 5 valid. If they were stricken out, the ordinance would still be complete. Sections 1 and 5 contain all the provisions that can have any possible bearing upon the appellant's case. The other sections (2, 3, and 4) are intended to regulate the keeper of a bar-room, or drinking-shop, who has obtained a license. The appellant did not have any; and there was no necessity for him to be exercised about the forfeiture of licenses, nor for this court to speculate upon the legal consequences that would follow in case of the violation of the terms of a license.

I am of the opinion that section 1 of the original ordinance, under the construction before indicated, was valid; section 5 of that ordinance was confessedly valid; that neither of said sections has been changed, repealed, or affected by amendment, except so far as the common council could lawfully establish the amendatory provisions contained in the later ordinance. I am also of the opinion that the appellant is not in a situation in this

case to question the validity of said provisions. The only way he could question them would be to pay the license money to the treasurer of the city, take his receipt therefor, tender it to the auditor, and demand the license;* and upon the latter's refusal to issue it, in consequence of the bond not being filed, to apply for a *mandamus* to compel its issuance; and that, without such payment and tender of receipt, the appellant has no right to be heard as to the validity thereof. This court is not even informed in this proceeding whether the auditor or common council exacted a compliance with the amendatory portion of said section 5. But in any event, the decision of this case would necessarily be the same, whether said provisions are valid or a nullity.

Some other questions were presented upon the argument, as against the validity of the said ordinances, and a point was attempted to be made as to the charter of the city not having been constitutionally enacted by the legislative assembly; but as these questions have been decided by this court adversely to the appellant's position in other cases before the court involving the legality of said charter and ordinances, I shall not stop to consider them.

The judgment appealed from should be affirmed.

Waldo, C. J., did not sit in the case.