## In re HULITT.

(Circuit Court, S. D. Ohio, W. D. October 4, 1899.)

### No. 5,323.

NATIONAL BANKS—DISTRIBUTION OF ASSETS IN INSOLVENCY—RIGHTS OF SHAREHOLDERS.

Where a number of the shareholders of a national bank in good faith paid an assessment made to comply with a requirement of the comptroller to make good an impairment of the bank's capital, although such assessment was invalid because made by the directors instead of by the stockholders, on the insolvency of the bank, and the winding up of its affairs by a receiver, after outside creditors are paid, such paying shareholders are

96 F.—50

entitled to be treated as creditors as against the nonpaying shareholders, and repaid the amounts so paid, before general distribution of the remaining assets among all the shareholders.

Henry M. Huggins, for receiver.

Steele & Sams, Ben B. Nelson, and E. N. Huggins, for stockholders.

THOMPSON, District Judge. This is an application by John Hulitt, receiver of the First National Bank of Hillsboro, Ohio, for instructions as to his duty in respect to the claims of certain shareholders to be reimbursed for an assessment paid by them under section 5205 of the Revised Statutes of the United States.

On the 25th day of April, 1896, the following notice was given to the bank by the comptroller of the currency:

"Treasury Department, Office of Comptroller of the Currency.

"Washington, D. C., April 25, 1896.

"Whereas, it appears to the satisfaction of the comptroller of the currency that the capital stock of the First National Bank of Hillsboro, Ohio, has become impaired to an extent which makes necessary an assessment of fifty thousand dollars ($50,000.00) upon the shareholders of said association to make good such deficiency: Now, therefore, notice is hereby given to said association, under the provisions of section 5205 of the Revised Statutes of the United States, to pay the said deficiency in its capital stock by assessment upon its shareholders, pro rata, for the amount of the capital stock held by each; and if such deficiency shall not be paid, and said bank shall refuse to go into liquidation, as provided by law, for three months after this notice shall have been received by it, a receiver will be appointed to close up the business of the association, according to the provisions of section 5234 of the Revised Statutes of the United States. In testimony whereof I have hereunto subscribed my name and caused my seal of office to be affixed to these presents, at the treasury department, in the city of Washington and District of Columbia, this 25th day of April, A. D. 1896.

"[Signed]                                                      James H. Eckels,
"[Seal.]                                              Comptroller of the Currency.

"To the First National Bank, Hillsboro, Ohio."

Thereupon, on the 27th day of April, 1896, the directors adopted a resolution making the assessment. Between the 27th day of April, 1896, and the 16th day of July, 1896, the shareholders, representing 545 shares of the capital stock, paid their proportion of the assessment, amounting to $27,250, but the other shareholders refused to pay their part thereof. On the 16th day of July, 1896, the bank, being wholly insolvent, suspended payment; and on the 22d day of July, 1896, it was placed, by the comptroller of the currency, in the hands of John Hulitt, as receiver. Afterwards, the receiver, under instructions from the comptroller of the currency, brought suit in this court to recover, from the nonpaying shareholders, their proportion of the assessment. But the court held that the assessment should have been made by the shareholders, and not by the directors, and that the attempted assessment by the directors was therefore illegal, and dismissed the bill. Afterwards an assessment was made by the comptroller of the currency, under section 5151 of the Revised Statutes, which was paid. Ninety per cent. of the debts of the bank have since been paid, and there is money enough in the hands

of the receiver to pay the remainder, leaving quite a large surplus for distribution to the shareholders. The shareholders who paid the first assessment claim to be creditors of the trust to the extent of that payment, but, under an agreement with certain of the shareholders, have waived the right to reimbursement until the general creditors of the bank are paid in full. They insist, however, as against the nonpaying shareholders, that they should be reimbursed for the moneys paid by them under that assessment, before final distribution is made to all the shareholders. They have presented their claims to the receiver, but the receiver has refused to allow them, unless instructed so to do by the court.

The comptroller of the currency advised the bank that its capital stock had been impaired to the extent of 50 per cent., and required it to assess its shareholders in that amount to restore the loss. And I think it is fair to assume that the action of the comptroller was based on knowledge of the condition of the bank (derived through the department examiners and inspectors) more thorough and complete than that of any of the shareholders, save those who were its directors and officers, and in control of the management of its affairs. And no question is made but that the paying shareholders paid the assessment in good faith, believing that the capital stock was impaired to the extent of 50 per cent.; that the assessment was legal and binding on all the shareholders; and that its payment would restore the loss, and save the bank. Yet, in fact, the entire capital stock had been lost, the assessment was illegal, and, within the three months allowed for its payment, the bank suspended payment, and was placed, by the comptroller of the currency, in the hands of a receiver, and the purpose for which the assessment was made wholly failed.

The assessment was illegal, but, as a matter of fact, the paying shareholders did not know that the law required it to be made by the shareholders instead of the directors, and did not know that, if paid in full, it would be wholly insufficient to restore the actual loss which the bank had sustained; and while, in view of their relation to the bank and their means of knowledge, their ignorance in these respects might not avail them as against the creditors of the bank, yet, as between them and the nonpaying shareholders, there certainly can be no application of the doctrine of voluntary payments, which will entitle the nonpaying shareholders to participate, on equal terms, with the paying shareholders, in the distribution of the fund remaining after the creditors have been paid,—a fund which was in part created by the contributions of the paying shareholders. These moneys were received by the bank to and for the use of the paying shareholders, and could not, in equity and good conscience, be retained by the bank. The paying shareholders became creditors of the bank, so far, at least, as the nonpaying shareholders are concerned.

In the case of Winters v. Armstrong, 37 Fed. 508, Winters subscribed to an increase of the capital stock of the Fidelity National Bank of Cincinnati, and paid the amount of the subscription into the bank. The increase, however, was not approved by the comptroller

of the currency, and never became valid and effective. Judge Jackson, at page 522, says:

"Winters could have recovered his deposit made on his subscription as against the association, and he is entitled to its allowance as a valid claim against the assets of the bank in the hands of the receiver, so far as anything disclosed by the pleadings appears. Subscribers may not in every case recover back deposits paid on subscribing for shares in contemplated corporations, or proposed increases of capital, where the scheme of incorporation or the proposed change proves a failure. In some cases, the right of recovery will depend on the meaning and intention of the parties as expressed in the subscription agreement. If, for instance, it appears to have been the intention or understanding of the parties that the deposit made on the subscription should be used and applied towards the furtherance or accomplishment of the scheme, and it is so applied, the subscriber may not be able to recover it upon the failure of the enterprise. When, however, such deposits are made in order to comply with some statutory requirement, and without any intention on the part of the subscribers or right on the part of the corporation to otherwise apply the same, then, upon failure of the scheme, the subscribers are entitled to have their entire deposits returned."

In Armstrong v. Law, 27 Wkly. Law Bul. 100, the syllabus reads as follows:

"L. borrowed money of the Fidelity National Bank on his promissory note. About the same time the stockholders of the bank, of which L. was one, resolved to increase the capital stock of the bank, and L. paid to the bank the amount of his shares of such increased capital stock. Before the bank received the necessary authority from the comptroller of the currency, under section 5142, Rev. St. U. S., for such increase of stock, and before, therefore, such increase became effective, it became insolvent, and was placed by the comptroller of the currency into the hands of a receiver, who demanded of L. payment of the note executed by him to the bank. L. claimed that the amount paid by him into the bank for the proposed increase of its capital stock was a proper set-off pro tanto against his note, and tendered to the receiver the difference in amount of his note and his payment on account of increase of stock. Upon refusal of such tender, L. brought suit, asking that the receiver be required to accept said sum, and deliver to L. his said note. Held, that the amount paid by L. on account of such proposed increase of capital stock of the bank, which had never become effective, was a proper set-off pro tanto against the note held against him by the bank."

In Witters v. Sowles, 32 Fed. 130, it is said, at page 138, that:

"The executor appears to have delivered to the bank, while its failure was impending, stocks and securities belonging to the estate, to an amount much larger than the amount of these shares, which were disposed of by the bank in payment and security of claims against it. He sets up in his answer that this was done upon an understanding that the property should be restored by the bank, if it survived, and applied on an assessment, if it failed, and one should be made. And he now claims that so much of this property or its proceeds as is necessary should be applied upon this assessment, and bar further recovery. He claims, upon the evidence, that this understanding was had, with the bank examiner as well as with the officers of the bank. This assessment is for the purpose of paying those who were creditors of the bank at the time of its failure. That property went to pay others not creditors at the time of the failure, so far as it did pay them. The delivery of the property may have created a liability of the bank. If so, the assessment upon this and the rest of the stock would go ratably upon that and the other liabilities, if proved and established."

The court refused to set off the claim of the executor against an assessment upon him, under section 5151, saying:

"The assessment never was due to the bank, and does not belong to it. The assessment belongs to the creditors of the bank, and is recoverable by the receiver, only for the purpose of ratable distribution among them."

Judge Ranney, in Ellis v. Trust Co., 4 Ohio St. 651, says:

"The action is brought for money had and received, and it lies in all cases where one has the money of another which he cannot in equity and good conscience retain. It lies, therefore, for money paid by mistake, or upon consideration which has failed; because, in such case, the plaintiff did not intend to give his money to the defendant, and the latter cannot conscientiously retain money for which he has given no equivalent."

These cases tend to support the view of the case at bar just presented.

But, in any event, upon the facts of this case, the court would hold, for the purposes of distribution among the shareholders, that the assessment attempted to be made by the directors, and which was paid by the shareholders who have been designated as the "paying shareholders," was an "assessment," within the meaning of section 3 of "An act authorizing the appointment of receivers of national banks and for other purposes," as amended March 2, 1897 (29 Stat. 600–602), which provides that when "the comptroller of the currency shall have paid to each and every creditor of such association, not including shareholders who are creditors of such association, whose claim or claims as such creditor shall have been proved or allowed," the comptroller of the currency shall call a meeting of the shareholders to decide whether the receiver or an agent to be selected by them shall thereafter wind up the affairs of the bank, and, whether wound up by the receiver or an agent, that—

"The proceeds of the assets or property of any such association which may be undistributed at the time of such meeting, or may be subsequently received, shall be distributed as follows: First, to pay the expenses of the execution of the trust to the date of such payment; second, to repay any amount or amounts which have been paid in by any shareholder or shareholders of such association upon and by reason of any and all assessments made upon the stock of such association by the order of the comptroller of the currency in accordance with the provisions of the statutes of the United States; and, third, the balance ratably among such stockholders in proportion to the number of shares held and owned by each. Such distribution shall be made from time to time as the proceeds shall be received and as shall be deemed advisable by the said comptroller or said agent."

When, therefore, the claims of the creditors are all satisfied, then the receiver, or an agent selected by the shareholders, will be required to distribute the remainder of the proceeds of the assets of the bank in accordance with the provisions of the statute just quoted; and I therefore instruct the receiver to allow the claims presented to him, for moneys paid under the assessment made by the directors, as claims or assessments to be paid or refunded before the final distribution to all the shareholders. I think, however, that payment of the claims of Samuel P. Scott and Joseph H. Richards should be withheld to await the final disposition of case No. 5,092, now pending in this court, wherein Charles E. Bell and others are plaintiffs, and Samuel P. Scott, Joseph H. Richards, and others are defendants, in which it is sought to recover from them the entire losses of the bank, on the ground that said losses were caused by reason of their miscon-

duct and negligence in the management of the bank; and, should judgment be rendered against them in that case, they will be entitled to credit thereon for the amount of the payments made by them under the assessment of April 27, 1897.