Argued March 31; affirmed April 20, 1937

# SKINNER *v.* DAVIS ET AL.

(67 P. (2d) 176)

*S. J. Graham* and *F. P. Keenan*, both of Portland (Liljeqvist, Swanton & McKeown, of Marshfield, on the brief), for appellant.

*Albert B. Ridgway*, of Portland (Ridgway, Johnson & Kendall, of Portland, on the brief), for respondents Carl L. Davis et al.

*Claud H. Giles*, of Marshfield, for respondent Harry Nasburg.

*W. U. Douglas*, of Marshfield, for remaining respondents.

BAILEY, J. This proceeding was instituted by the superintendent of banks of the state of Oregon, as plaintiff, against Carl L. Davis and other stockholders within the state of Oregon of the Bank of Southwestern Oregon, of Marshfield, and the attorney general of this state, for a declaratory judgment as to the duties and

powers of the plaintiff as statutory liquidator of that bank, and the rights and obligations of the defendant stockholders.

The following statement is substantially as set forth in the amended complaint: The bank was organized March 12, 1917, under the banking laws of this state, and ever since then until about January 18, 1932, was engaged in banking business. Its capital stock was divided into 1,000 shares of the par value of $100 each, all of which were, prior to that date, subscribed for by numerous individuals to whom certificates therefor were issued. Only one of those owners of stock had acquired his holding, amounting to 10 shares, subsequent to the effective date of the 1931 enactment to which reference is hereinafter made. On January 18, 1932, the board of directors of the bank, pursuant to and in accordance with the provisions of § 22-1902, Oregon Code 1930, turned over to the superintendent of banks the business and assets of the bank for liquidation.

Paragraph XVI of the amended complaint contains the following allegations:

"That on or about the 29th day of January, 1932, the then superintendent of banks of the state of Oregon without first having made a finding or determination that a stock assessment of $100.00 per share was required and necessary to pay the deposit liabilities of said bank and acting pursuant to section 31, chapter 278, Oregon Laws 1931, levied an assessment upon the stockholders of said bank in the sum of $100.00 per share. That a correct copy of said stock assessment is attached hereto, marked Exhibit 'A' and by reference made a part hereof just as though it were fully set forth herein."

Exhibit "A" above mentioned is headed, "In the circuit court of the state of Oregon for the county of

Coos'' and is entitled, ''In the matter of the liquidation of the Bank of Southwestern Oregon, Marshfield, Oregon.'' It recites the placing of the bank in the hands of the superintendent for liquidation and states that the bank was ''closed for liquidation without first paying the deposit liabilities in full.'' The exhibit further sets forth the names and addresses of all stockholders, with the number of shares of stock owned by each, and continues thus: ''Now therefore, in consideration of the above and in accordance with provisions of section 31, chapter 278, General Laws of Oregon 1931, I, A. A. Schramm, superintendent of banks of the state of Oregon, hereby levy an assessment on each of the above listed stockholders of the Bank of Southwestern Oregon, Marshfield, Oregon, *individually and not one for another for the benefit of the depositors of said bank* to the amount of their stock of the par value thereof, namely in the sum of $100 per share.'' [Italics supplied.] It then recites that the assessment is to be paid within 30 days from the date of the levy and shall bear interest at the rate of 6 per cent per annum from that date until paid.

Pursuant to this assessment the stockholders of the bank paid to the superintendent of banks the sum of $34,124.45. Twelve of the stockholders paid the entire amount assessed against them, totaling $18,562. Five paid the entire amount levied against them, totaling $4,260.66, and all accrued interest thereon, amounting to $74.80. Three of the stockholders paid under protest the total amount of their respective assessments, aggregating $2,456 principal and $81.26 interest. Eight stockholders paid only a small part of their respective assessments.

Action was instituted against two of the stockholders who had failed to pay assessments levied

against them and judgment was entered against them for the full amount of their respective assessments, less a small sum paid by one of said stockholders. Only small sums have been paid on the judgments so entered.

The superintendent of banks, pursuant to an order made by the circuit court having supervision of the liquidation of the bank, entered into a compromise agreement with four stockholders. One of them had paid the full amount of his assessment and the compromise affected only the amount of interest to be paid. Other compromises with two stockholders provided for payment by them of one-half and less than one-tenth, respectively, of the principal assessed against them. As to the fourth compromise, the assessment was for $2,300, of which $1,300 had been paid on the principal and in addition $258.63 interest, before the compromise was made. The agreement therein provided for the payment of $956 in settlement of the alleged balance due.

Four of the remaining stockholders had not paid anything at the time the compromise was effected. One of these paid, under the agreement, the full amount of principal, with $40 interest. Another paid $200 on an assessment of $208. The third paid $300 on an assessment of $520. And the fourth paid $125 on a $416 assessment. These four owned both fractional and whole shares of stock.

The amended complaint, after setting forth the foregoing facts, avers that on February 19, 1935, this court in the case of *Hibernia Securities Company v. Pirie*, 149 Or. 434 (41 P. (2d) 431), held that § 31 of chapter 278, Oregon Laws 1931, was unconstitutional and void as to holders of bank stock who had acquired their stock previous to the effective date of said statute,

insofar as it authorized an assessment of 100 per cent on stock without a finding and determination by the superintendent of banks that said assessment was required and necessary to pay deposit liabilities.

Thereafter, it is alleged, the plaintiff herein, who had succeeded A. A. Schramm as superintendent of banks, made a finding and determination that the assets of said bank were insufficient to pay its deposit liabilities and that such deficiency amounted to the sum of $52,250, and he accordingly levied an assessment on all the stockholders of the bank for the benefit of depositors, in the sum of $52.25 per share. A copy of this assessment, containing the names and addresses of all stockholders, together with the number of shares owned by each, was also attached to and made a part of the amended complaint.

The plaintiff avers that as superintendent of banks he is entitled "to retain for the benefit of the depositors of said bank all moneys, principal and interest, paid by the stockholders by reason and on account of the first stock assessment as set forth in exhibit 'A' attached hereto;" and that the defendant stockholders "contend that they are entitled to the return of all sums of money paid by them on account of said first stock assessment, including interest thereon from the date such assessments were made, until repayment." As a basis for a declaratory judgment the plaintiff alleges that he takes the position "that the said second stock assessment as set forth in exhibit 'B' attached hereto is a valid assessment," while "the defendant stockholders and each of them, contend that said second stock assessment is wholly void." The amended complaint also sets forth various other contentions of the superintendent of banks and what he believes those of the defendant

stockholders to be. These include the argument advanced by the stockholders to the effect that if the second assessment is valid, then they are entitled to a refund of all sums paid by them on the first assessment, and the contention of the superintendent that § 154, chapter 207, Oregon Laws 1925, which is codified as § 22-2101, Oregon Code 1930, and which was sought to be amended by § 31, chapter 278, Oregon Laws 1931, was in full force and effect and permitted the second assessment which was made.

The plaintiff prays for a decree of the court to the effect: (1) that the plaintiff as superintendent of banks is entitled to retain for the benefit of depositors all sums paid to him on account of the first assessment; (2) that the second stock assessment is valid; (3) that the superintendent of banks is entitled to credit upon the second assessment all sums paid on the first assessment, and in the event that any stockholder has paid a greater sum under the first stock assessment than required under the second, the superintendent of banks is entitled to retain all money so paid, for the benefit of depositors; (4) that certain parts of § 22-2101, *supra,* are now in force and effect; (5) that § 20 of chapter 227, Oregon Laws 1933, which is an amendment of § 22-2101, *supra,* as amended by § 31, chapter 278, *supra,* is in full force and effect, with certain exceptions mentioned; (6) that the superintendent of banks is authorized and empowered to sell, subject to approval of the circuit court, the liability of any stockholder arising on account of any stock assessment levied by him against stockholders of the insolvent bank; and (7) that action or suit to enforce the liability of any stockholder of the bank may be commenced at any time within three years of the date of the said assessment.

Four separate answers were filed by individual stockholders or groups. These answers admitted the insolvency of the bank, the names of the stockholders, the amount of stock owned by each, the averment concerning payment by various stockholders under the purported first assessment, whether the said payment was made with or without compromise, the entry of judgment against two of the stockholders, the second assessment by the superintendent of banks, and many of the other allegations contained in the amended complaint. They further admitted that the first assessment was made by the superintendent without first having made a finding or determination as to the amount necessary to pay the deposit liabilities, but denied that such attempted assessment operated as a levy upon the various stockholders in the sum of $100 per share or any other amount. The defendants also attached to the answers as an exhibit a copy of the notice of stock assessment served upon them, which notice referred to the purported assessment of January 29, 1932.

In the course of the trial it was stipulated: "That the first stock assessment was made by the superintendent of banks without a finding and determination of the necessity therefor or the amount thereof, and that the answering defendants were without knowledge that the assessment was so made."

There was introduced in evidence as an exhibit a compilation of the assets and liabilities of the bank made by the superintendent at the time of, and as a basis for, the second assessment. In this tabulation, which is headed "Data for determination of deficiency of assets to pay deposit liabilities," is included under the caption "liabilities" the $34,124.45 paid by stockholders under the first assessment. With this amount

charged to liabilities, there is shown a deficit of $52,-244.44, which is the approximate total of the second assessment.

The record discloses that if the second assessment is paid by all the stockholders the depositors will be paid in full, and without using the money which was paid by the stockholders on the first assessment. It is further shown by the record that as the stockholders paid in response to the first assessment, the money so received by the superintendent was put into a special fund out of which dividends were from time to time paid to the depositors, so that out of the total amount received on the first assessment all but $4,630.40 was so disbursed. This amount was increased by proceeds from the bank's assets and at the time of the trial there was in the special fund sufficient money to repay the stockholders who had paid more than $52.25 per share the excess they had paid over the amount fixed by the second assessment.

The circuit court entered a decree to the effect that the first assessment was void; that the second assessment was valid; that the superintendent of banks could retain for the benefit of depositors of the bank "all moneys paid by the stockholders of said bank, both principal and interest, upon the first purported stock assessment levied on January 29, 1932, up to and including the amount of the second stock assessment levied against said stockholders of said bank in the sum of $52.25 per share on December 3, 1935;" that he should credit each of the stockholders who had "made a payment of either principal or interest upon the first purported stock assessment against the stockholders of said bank . . . with all moneys so paid, both principal and interest, upon the amount of the said second

stock assessment . . . up to and including the amount of said second stock assessment, to-wit: the sum of $52.25 per share;" and that he "should refund and repay to each of the stockholders of the Bank of Southwestern Oregon any excess over and above the sum of $52.25 per share of stock," the amount paid by any stockholder as principal or interest on the first purported stock assessment, irrespective of whether or not said payments on said purported stock assessments were made pursuant to an attempted compromise; and that such repayment should not include interest. The court further held that the purported compromises were inoperative and of no effect.

The superintendent of banks has appealed from that part of the decree which holds that he may not retain any sum paid by stockholders on the first assessment over and above the amount of the second assessment, that part requiring him to repay all sums paid on the first assessment in excess of the second assessment, and that part of the decree which holds that the compromises were invalid.

■ Section 3 of article XI of our constitution prior to its amendment in 1912 limited the liability of stockholders of all corporations and joint stock companies to the amount of their stock subscribed and unpaid. In 1912 there was added by amendment to this section an exception as to stockholders of corporations or joint stock companies conducting a banking business. The new provision was to the effect that such stockholders "shall be individually liable equally and ratably and not one for another, for the benefit of the depositors of said bank, to the amount of their stock, at the par value thereof, in addition to the par value of such shares". The wording of the amendment was almost identical with that of a federal act which pre-

ceded it and which in a number of instances had been construed by the supreme court of the United States, except that the federal act provided that the liability should be for the benefit of the creditors of the bank and did not limit it, as does ours, to the bank's depositors.

In the case of *United States ex rel. Citizens' National Bank v. Knox*, 102 U. S. 422 (26 L. Ed. 216), it was pointed out:

"* * * that each shareholder shall contribute such sum as will bear the same proportion to the whole amount of the deficit as his stock bears to the whole amount of the capital stock of the bank at its par value. There is a limitation of this liability. It can not in the aggregate exceed the entire amount of the par value of all the stock.

"The insolvency of one stockholder, or his being beyond the jurisdiction of the court, does not in any wise affect the liability of another; and if the bank itself, in such case, holds any of its stock, it is regarded in all respects as if such stock were in the hands of a natural person, and the extent of the several liability of the other stockholders is computed accordingly."

■ After the amendment of said § 3 of article XI of our constitution in 1912, the legislature in 1913 amended the then existing laws to provide a procedure to be followed by the superintendent of banks in making an assessment against the stockholders of a bank taken over by him: § 6222, O. L. In construing that section this court in *State Bank v. Gotshall*, 121 Or. 92 (254 P. 800, 51 A. L. R. 1200), held that questions as to the necessity of assessing stockholders and the amount of such assessment were left to the discretion of the superintendent of banks, and that his decision could not be attacked by a stockholder in an action to collect such assessment.

In 1925 the legislature enacted a new banking code (chapter 207, Laws 1925) which repealed § 6222, O. L. Section 154 of the 1925 ,act, which is now known as § 22-2101, Oregon Code 1930, embodied the essential features of said § 6222, *supra*, as to the levy of an assessment by the superintendent of banks against stockholders of insolvent banks. The rule, therefore, as announced in *State Bank v. Gotshall*, supra, that the action of the superintendent of banks is not subject to attack, would apply to the 1925 enactment.

Under the 1925 law, if the superintendent of banks finds "that the assets of such bank or trust company are insufficient to pay its deposit liabilities, it shall be the duty of the superintendent of banks to ascertain the amount of such deficiency and he shall levy an assessment upon the stockholders of such bank or trust company for the amount of such deficiency, not exceeding their liabilities, as provided by law". In the instant case it appears that the superintendent made no attempt to ascertain and determine the amount of the deficiency to pay the deposit liabilities in full, prior to making the first assessment against the stockholders of the bank here involved. Apparently, from the facts developed on the trial of this case, he was relying upon the provisions of § 31, chapter 278, Oregon Laws 1931, purporting to amend § 22-2101, *supra*, which provided that the insolvency or closing of any bank for liquidation without first paying its deposit liabilities in full should be prima facie evidence that the assets of such bank were insufficient to pay its deposit liabilities by an amount at least equal to the capital of such bank.

This first assessment was made prior to the decision of this court in *Hibernia Securities Company v.*

*Pirie,* supra, wherein it was held that § 31 of the 1931 act was "unconstitutional and void as to those stockholders who purchased their stock prior to the effective date of the 1931 amendment, as impairing the obligation of their contract, in violation of the federal and state constitutional provisions hereinabove cited". The constitutional provisions referred to were article I, § 10, of the constitution of the United States, and article I, § 21, of the constitution of this state. We further held in that case that "the change in the law attempted in 1931 was more than a change in procedure. It affected substantial rights of the defendant by imposing additional liability upon her."

It follows from our decision in *Hibernia Securities Company v. Pirie,* supra, that the attempted first assessment dated January 29, 1932, was void as to all the shareholders, whether they acquired their stock prior or subsequent to the enactment of the 1931 statute above mentioned. That enactment as applied to assessments against shareholders who acquired stock subsequent to its passage would make them liable, to the amount of the par value of their stock, not only to the bank's depositors but also to its creditors, and in addition liable for such stockholders as did not pay the assessment levied against them, in contravention of § 3, article XI, Oregon constitution.

■ Section 22-2101, *supra,* as amended by § 31, chapter 278, Oregon Laws 1931, was further amended by the legislature in 1933 (§ 20, chapter 227, Oregon Laws 1933). In this last amendment the same objectionable features of the 1931 enactment which were held unconstitutional in the Hibernia case are retained. Nothing contained in the 1933 statute would cure the invalidity of the 1931 act. There were added, however, by the

1933 amendment provisions as to service of notice of assessment by the superintendent of banks, creation of encumbrances by filing notice of assessment with the county clerk, and other details relative to the enforcement of stockholders' liability. None of the new matter contained in the 1933 amendment would be of any force or effect unless there had first been made a finding or determination by the superintendent of banks.

Both the appellant and the respondents concede that the 1933 amendment insofar as it attempts to provide for the levying of an assessment against stockholders of a bank is unconstitutional, in view of the decision of this court in *Hibernia Securities Company v. Pirie*, supra. It is asserted by the appellant, however, that the decision in that case does not necessarily affect the force of the 1931 act relative to the authority of the superintendent to compromise liability of stockholders, which provision is found repeated in the 1933 act, nor render ineffective certain other provisions contained in the 1933 act. The appellant would have us reconstruct § 22-2101, *supra*, by retaining the provisions of that section before its attempted amendment as to authority of the superintendent of banks to make an assessment against the stockholders of the bank after determining that the assets of the bank are insufficient to pay the depositors in full, and then adding thereto the provisions contained in the 1931 and 1933 amendments granting to the superintendent authority to compromise assessments and other claims, and certain other features that are considered beneficial to the superintendent in the liquidation of insolvent banks.

There cannot be extant, as pointed out by this court in *State v. Lightner*, 77 Or. 587 (152 P. 232), an

amended and an unamended form of the same statute. As said in the opinion therein: ''Amendment of an act or section by setting it out in full 'so as to read as follows' operates as an entire obliteration of the former act after the new one goes into effect.'' The 1931 act attempted to amend § 22-2101, *supra*, to read in a certain manner, and the amendment purported to include the entire section as so amended. The same is true of the 1933 statute. This method of amending was in accord with the constitution, article IV, § 22, which requires that the ''section amended shall be set forth and published at full length''. See, also, I Sutherland on Statutory Construction (2d Ed. by Lewis), § 237. The provisions of § 22-2101, *supra*, prior to the attempted amendment thereof cannot be revived by judicial construction and inserted in or added to either the 1931 or the 1933 amendment of that section: *State v. Lightner*, supra; *State v. Simon*, 20 Or. 365 (26 P. 170).

■ Since the only authority which the superintendent has to levy an assessment against stockholders is found in the 1925 act (§ 22-2101, Oregon Code 1930), in view of the unconstitutionality of the 1931 enactment and consequent invalidity of the similar act of 1933, he relies upon the rule of law that when an amendatory section of an act is declared unconstitutional the section sought thereby to be amended remains in full force and effect: *State v. Savage*, 96 Or. 53 (184 P. 567, 189 P. 427); *Portland v. Coffey*, 67 Or. 507 (135 P. 358); *Portland v. Schmidt*, 13 Or. 17 (6 P. 221); *In re Opinion of the Justices*, 269 Mass. 611 (168 N. E. 536, 66 A. L. R. 1477).

■ It is apparent that the 1933 act and the 1931 enactment which it sought to amend are both void *in toto*. If the provisions as to levy of assessments by the su-

perintendent be eliminated from the 1933 statute and the remainder of that act be held unaffected by the unconstitutional provisions contained therein, and existing in full force and effect, it would constitute § 22-2101 in its entirety as so amended; and so much of the original § 22-2101 as had not been reincorporated into the 1933 amendment would become nonexistent. The superintendent would therefore be without authority to levy any assessment, for the reason that the only power which he could have in that respect would be derived from § 22-2101 before its amendment. And if the superintendent had no authority to make assessments, the remaining parts of the 1933 act would have no application or meaning. Therefore it is obvious that the legislature did not intend that if the provisions in the section as amended in 1933, relative to levy of assessments, were void, the remainder of said section should continue in full force and effect. It follows that § 154, chapter 207, Oregon Laws 1925 (§ 22-2101, Oregon Code 1930), remains fully operative, unaffected by the attempted amendments of 1931 and 1933.

In our above statement of the case attention was called to the order of the superintendent of banks dated January 29, 1932, levying the first assessment against the stockholders of the bank. In making that levy, as pointed out, the superintendent stated that in accordance with the provisions of § 31, chapter 278, Oregon Laws 1931, he thereby levied an assessment. But it is evident from a reading of the entire order that he did not follow in all particulars the procedure outlined by that section, inasmuch as he stated therein that the assessment was made on the stockholders "individually and not one for another for the benefit of the depositors of said bank to the amount of their stock at the par

value thereof, namely in the sum of $100.00 per share''. According to the holding of this court in the Hibernia case an assessment made under sanction of the 1931 act was not to be levied according to the pro rata liability of each stockholder, nor was the amount to be paid by the stockholders under such assessment limited to the deposit liabilities of the bank.

A copy of this first order of assessment was attached to plaintiff's amended complaint as an exhibit. Yet the plaintiff specifically alleges that this assessment was made without a determination as to the assets and liabilities of the bank. The litigants stipulated at the trial that such was the fact, and further stipulated that the defendants had not known at the time they made their payments that a determination as to the amount of deficiency of assets of the bank to pay depositors had not been made by the superintendent before levying the first assessment. This would indicate that the plaintiff did not believe that the order showed on its face that the levy had been made without such determination. Otherwise, a stipulation as to failure to make a determination would have been unnecessary.

█ In the liquidation of an insolvent bank, the superintendent acts as trustee for the creditors and stockholders of the bank: *First State Bank v. Conant*, 117 Neb. 562 (221 N. W. 691); *In re Anthracite Trust Co.*, 319 Pa. 113 (179 Atl. 245); *Binsfield v. Johnson*, 6 F. Supp. 29; *Hanover State Bank v. Barry*, 170 Minn. 445 (213 N. W. 36); *Timmer v. Hardwick State Bank*, 194 Minn. 586 (261 N. W. 456); *Tabler v. Higginbotham*, 110 W. Va. 9 (156 S. E. 751); *Broderick v. Adamson* 146 Misc. 456 (262 N. Y. S. 582). The moneys collected by him are required to be deposited by him in one or more

banks under his supervision and subject to his order: § 22-2014, Oregon Code 1930, as amended. See § 1, chapter 18, Oregon Laws 1935, Special Session.

Under statutory provisions similar to those of § 22-2101, *supra,* the superintendent of banks, according to the great weight of authority, may proceed at once to enforce the liability of stockholders of a bank to be liquidated, without waiting to collect and apply other assets: Braver, Liquidation of Financial Institutions, § 368. As said by the same text writer in § 372:

"Liquidation presupposes the prompt and speedy conversion of assets to cash in the interest of creditors, and the right to enforce and collect the assessment should not be subject to defeat by the mere balancing of the opposing opinions and views of expert witnesses upon questions of reasonable values. If it should ultimately appear that the assessment was unnecessary in whole or in part, the stockholders are entitled to share in any remaining surplus. As between the stockholder and the creditor, it is the convenience of the latter that is preferred by the courts."

Such assessments, however, as previously pointed out, cannot be made under our law until it is determined that there is a deficiency of assets to discharge the deposit liability. If the first assessment is less than the full liability of the stockholders and proves to be insufficient, the superintendent is given authority to levy further assessments "up to the amount of the stockholders' liability". It is therefore obvious that any assessment made by the superintendent of banks is based on an estimate and is not intended as a final determination of the total amount to be paid by the stockholders.

In this instance it was determined by the superintendent in December, 1935, that the liability of the

stockholders was $52.25 per share of stock. The liquidation of the bank has not been concluded. As it progresses other assessments may be found necessary. At present, however, the superintendent has on hand, collected from numerous stockholders, a considerable sum in excess of the amount which he has determined after an investigation to be their pro rata share of the deficiency. This excess was collected on the first assessment, the order for which represented that the assessment was made against the stockholders "individually and not one for another for the benefit of the depositors of said bank". At the time of this first assessment the stockholders did not know that a determination had not been made by the superintendent of banks prior to the levy. It now develops that no such determination had been made. It further appears that the first assessment was excessive. In *Hanover State Bank v. Barry*, supra, it is said:

"The finding upon the hearing of the petition as to the value of the assets or the amount of liabilities is not binding except as it concludes the stockholders upon the necessity of an assessment and the amount of it. In the liquidation the court proceeds upon equitable principles just as a court of equity in the administration of any estate. If there is a surplus, it goes where it should. This is the effect of the statute and it would be so without statutory declaration."

The money collected from the stockholders should be held and applied by the superintendent of banks to meet the stockholders' additional liability imposed upon them by the constitution: § 3, article XI. In accord with that provision of our constitution the stockholders are "individually liable equally and ratably and not one for another, for the benefit of the depositors of said bank, to the amount of their stock, at

the par value thereof, in addition to the par value of such shares.'' If, before making the first assessment, the superintendent had actually made a determination as to the assets and liabilities of the bank, there could be little doubt that if the amount of the assessment against each stockholder were in excess of the pro rata liability of the stockholder as later determined, the superintendent would be required to repay to those stockholders who paid the full amount of the original assessment the excess over and above what was finally found to be their pro rata liability: *Hanover State Bank v. Barry,* supra; *Broderick v. Adamson,* supra; *Tabler v. Higginbotham,* supra; Braver, Liquidation of Financial Institutions, §§ 183, 184 and 372.

There is in principle no reason why a stockholder who has paid the full amount of a purported assessment without knowledge that the superintendent of banks has not first made a determination as to the necessity and amount thereof should not have the same right to the return of the surplus so paid by him that a stockholder would have who has paid an assessment based upon a determination by the superintendent, especially when, as in the instant case, the order levying the assessment did not purport to subject the stockholder to any liability greater than that imposed upon him by the constitution. See, in this connection, *In re Hulitt,* 96 Fed. 785. In making his second assessment, the superintendent realized that he should charge to the liabilities which had to be met the amount paid on the first assessment, in order to sustain the second assessment.

■ Our conclusion is that those stockholders who prior to the date of the second assessment paid without compromise in excess of $52.25 per share on the first

purported assessment are entitled to be repaid such excess. This rule would also apply to stockholders, if any, who, pursuant to judgment rendered against them, have paid more than $52.25 per share. The superintendent had a right to enforce any valid assessment against the stockholders by bringing suit or action in court without waiting to ascertain the exact amount of assets and liabilities of the bank, and any stockholder who paid such judgment would be entitled to the same consideration in regard to return of surplus paid by him as would those stockholders who paid without suit or action brought.

 Several of the stockholders have paid in excess of $52.25 per share pursuant to compromises between them and the superintendent of banks. The facts alleged in the amended complaint concerning those compromises are very meager, and we must therefore assume that the attempted adjustments were made without knowledge on the part of the stockholders that the amount assessed against them was not based on a determination of the necessity therefor by the superintendent. There is the further circumstance that the 1925 banking code does not expressly authorize the superintendent to compromise stockholders' liabilities. Section 22-2012, Oregon Code 1930 (§ 161, chapter 207, Laws 1925), authorizes the superintendent to collect money due the bank and to do all things necessary to preserve its assets and business, and further empowers him to "sell or compound any bad or doubtful debts". This section was amended in 1933 (§ 22-2012, Oregon Code Supplement 1935), but the amendment does not in anywise enlarge the superintendent's power in this respect. The great weight of authority is to the effect that the stockholders' liability is not a debt or an asset

of the bank, and in case of limitation of such liability to depositors it is available only to them or to the liquidator for their benefit: Braver, Liquidation of Financial Institutions, § 384. Therefore, the power to compound debts of the bank did not extend to compromising the liabilities of stockholders.

The legislature must have realized that the existing law was not broad enough to allow the superintendent to compromise stockholders' liabilities, and therefore it inserted in the 1931 and 1933 amendments of § 22-2101, *supra*, which amendments were invalid, as we have pointed out, a provision attempting to confer upon the superintendent power so to compromise with stockholders. Regardless of any implied power the superintendent might have to compromise a valid assessment, such authority would not extend to void assessments. We therefore hold that the purported compromises made by the superintendent were ineffective.

It follows that the decree of the circuit court should be affirmed, and it is so ordered. No costs will be allowed in this court.

ROSSMAN, J., not participating.